Guy E. MATTHEWS and Matthews
& Associates, Appellants,

v.

HOME INSURANCE COMPANY,
Appellee.

No. 01–94–00225–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 8, 1996.

Rehearing Overruled March 7, 1996.

Joe H. Reynolds, Kay K. Morgan, Michael D. Sydow, Paula Diliott, Houston, for appellants.

Frank G. Jones, Katherine D. Mackillop, Joy M. Soloway, Fulbright & Jaworski LLP, Houston, for appellee.

Before COHEN, WILSON and HEDGES, JJ.

## OPINION

COHEN, Justice.

Appellants (Matthews) appeal from a take-nothing summary judgment that Home's insurance policy does not cover a legal malpractice claim against them. The main issue in this case is whether Matthews is covered for malpractice occurring before May 4, 1990, even though he signed an endorsement clearly stating that he had no such coverage. We hold he is not covered and affirm the judgment.

## FACTS

On April 24, 1991, Matthews was served with a citation in a lawsuit alleging that he committed legal malpractice in 1989 and earlier.[1] Home insured Matthews. Its original policy was issued on June 14, 1990, for the period May 4, 1990, through May 4, 1991, and was renewed the next two years. The policy and both renewals excluded coverage for acts of malpractice occurring before May 4, 1990; the alleged malpractice occurred before May 4, 1990.

Home denied coverage because the claim arose before May 4, 1990, and because Matthews did not notify it of the claim until October 31, 1991, more than six months after the original policy ended on May 4, 1991. The policy requires that three events must occur to trigger coverage: (1) the act causing the claim must have occurred on or after May 4, 1990; (2) a claim must be made against the insured during the policy period; and, (3) the insured must notify Home of the claim during the policy period. Only the second event occurred. It is undisputed that neither of the other events occurred.

Matthews sued Home, alleging breach of contract, bad faith, and violations of the Insurance Code and the Deceptive Trade Practices Act. The trial court granted summary judgment on all claims.

## POINTS OF ERROR

■ Matthews' second point of error contends a fact issue exists "concerning what was the contract of the parties." Matthews contends that the contract consists solely of the declarations page (Appendix 1) and nothing else because he never received anything else from Home. He contends that even the endorsements listed there do not bind him because Home never furnished them to him on or after June 14, 1990, the "issue date" of the policy.

Matthews cannot prevail because 1) he signed a prior acts exclusion endorsement on June 8, 1990, that excludes this claim from coverage, 2) that endorsement is part of the policy because it is listed on the declarations page, and 3) such endorsements are valid even though they limit broader statements of coverage elsewhere in the policy.

Matthews argues on appeal that Home asked him to sign the exclusion "during the negotiating period" so that Home could

---

1. In 1981, Matthews represented Durango Associates and won a judgment for $11.6 million. That judgment was set aside, and Durango then sued Matthews, alleging that his acts caused the judgment to be set aside.

"quote" him a price on different coverage.[2] He contends that, therefore, the prior acts exclusion is not a contract, but rather mere negotiation for a contract. We disagree. Regardless of any negotiation, the exclusion was part of the final insurance contract issued.

Matthews also contends the endorsement is not binding because it begins, "The following information is required only when this endorsement is issued subsequent to preparation of policy." Appendix 2. Here, the policy afforded coverage beginning May 4, 1990, but its "issue date" was June 14, 1990. Blanks left open include "policy number," "endorsement number," and "effective date." Matthews contends the language itself shows the endorsement was not meant to be effective. Again, we disagree. This policy was in effect from May 4, even though it was not "prepared" (or at least, "issued") until June 14. If, as Matthews contends, the declarations page constitutes the entire policy, then the endorsement was not "issued subsequent to preparation of the policy." Matthews signed it on June 8, before preparation of the policy. Matthews cites no authority construing this language, and no public policy requires it to be construed in a way that would avoid the endorsement's plain meaning.

Under *Nixon ·v. Mr. Property Management Co. Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985), we must presume as true all evidence which is favorable to the non-movant and indulge every reasonable inference in his favor. Summary judgment is proper only when no genuine fact issue exists. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). Applying this standard, we find no evidence of a fact issue "concerning what was the contract of the parties." Matthews did not allege ambiguity in the contract; rather, he states that, "Home has waived any exclusionary provisions of the insurance policy by making a subsequent misrepresentation that was at variance with the written terms of the policy." The "subsequent misrepresentation" is contained in the declaration page, which provides:

1. "This is a claims made policy";
2. "The policy is limited to liability for only those claims that are first made against the insured during the policy period"; and,
3. "This policy embodies all agreements existing between the insured and the Company".

In addition, Matthews swore that the only contract document he received from Home was the declaration page:

I never discussed the "policy jacket" with any person from Home Insurance. The first time I saw the "policy jacket" was when I was shown a copy of Home's motion for summary judgment.... At the time I bought the policy, I understood that any claim made during the policy period would be covered. If I had known that this policy required the act occur, the claim be made and the notice to be given, all within the same policy period, I would not have purchased this policy....

The declaration page lists six other documents in "Item 7. Forms Attached at Issuance." Below that is the following statement:

By acceptance of this policy the Insured agrees that the statements in the Declarations and the Application **and any attachments hereto** are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

(Emphasis added.)

Two of the attachments are relevant here. One is the policy,[3] which covers only claims "first made against the insured during the policy period and reported to the company during the policy period...." The policy requires Matthews to notify Home of claims "as soon as practicable" and "immediately" if he is sued. Most important, Matthews signed on June 8, 1990, the prior acts exclusion endorsement, which excludes losses resulting "from any acts, errors, omissions,

---

**2.** No summary judgment evidence supports these contentions.

**3.** The policy is also referred to as the "policy jacket."

or personal injuries occurring or alleged to have occurred prior to 5/4/90." These documents are part of the contract for insurance. *See Board of Ins. Commr's v. Great Southern Life Ins. Co.*, 150 Tex. 258, 239 S.W.2d 803, 809–10 (1951). The general rule of contracts that several instruments pertaining to the same transaction shall be read together applies to contracts for insurance. *Id.* ("Where several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together although they do not expressly refer to each other."); *see also Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994) ("Interpretation of insurance contracts in Texas is governed by the same rules as interpretation of other contracts."). Each part of an insurance contract should be given effect such that a specific provision limiting the time of coverage controls over a provision of general coverage. *Forbau*, 876 S.W.2d at 133–34. If inharmonious provisions are found, the "general intent and leading purpose [of the contract] should control minor provisions." *E.H. Perry & Co. v. Langbehn*, 113 Tex. 72, 252 S.W. 472, 474 (1923).

The declaration page Matthews received expressly refers to six other documents. Therefore, the insurance contract should be read to encompass all seven documents. *Perry*, 252 S.W. at 474 (where a freight engagement note expressly referred to a bill of lading, the two should be construed together as one contract executed by and acted upon by the parties). Matthews argues that the "claims made" language of the declaration page conflicts with the policy jacket's limitations on coverage and reporting periods; however, under *Forbau*, the more specific provisions of the policy and of the prior acts exclusion endorsement control over the general language in the declaration page. *Forbau*, 876 S.W.2d at 133–34.

Moreover, even if Home did not provide the documents listed on the declaration page, Matthews knew, because he signed the endorsement, that the insurance contract was incomplete on its face. *See Stephenson v. Nelson*, 243 S.W. 1069, 1071 (Tex.Comm'n App.1922, judgm't adopted) ("The bond by its terms guaranteed the performance of the contract attached thereto..... When the bond was tendered to defendant in error, it had no contract attached. It was incomplete on its face, and defendant in error was thereby put on inquiry with reference to what contract plaintiff in error, in fact, guaranteed should be performed. Defendant in error was not warranted in assuming that such surety understood the contract as he understood it."). We hold that the contract included more than the declarations page. It included, at least, the endorsement excluding acts before May 4, 1990. Therefore, there was no fact issue concerning what the contract of the parties was.

We overrule the second point of error.

■ In his third point of error, Matthews contends a fact issue existed on whether Home breached the contract. Home's summary judgment evidence conclusively established that the prerequisites to coverage were not met.

Considering the declaration page, the policy jacket, and the prior acts exclusion endorsement together, three events (listed above) had to occur to trigger coverage, and only one occurred. Matthews was served by Durango on April 24, 1991, but failed to notify Home until October 31, 1991, more than six months later. Thus, Matthews did not notify Home "as soon as practicable" or "immediately" of the suit. Moreover, Matthews, in answering Durango's lawsuit in 1991, pleaded that the alleged malpractice occurred more than two years before. Because Durango's claim arose before May 4, 1990, Home conclusively proved that it did not breach the contract.

We overrule the third point of error.

■ In his fourth point of error, Matthews alleges there was a fact issue on whether Home denied coverage in bad faith.

■ An insurance company acts in bad faith if it denies coverage when it knows or should know that it has no reasonable basis to do so. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex.1994). Home's denial of coverage was reasonable, as a matter of law, based, at least, on the prior acts exclusion.

We overrule the fourth point of error.

■ In point of error five, Matthews contends Home's motion for summary judgment failed to address his causes of action under sections 4 and 16(a) of article 21.21 of the Texas Insurance Code. Section 16 prohibits insurers from engaging in acts defined as unfair under section 17.46, *et seq.* of the DTPA or under section four of article 21.21. TEX.INS.CODE ANN. art. 21.21 § 16(a) (Vernon Supp.1996). Section four prohibits any insurer from making any "statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby...." TEX.INS.CODE ANN. art. 21.21 § 4(1) (Vernon Supp.1996).

Home cites *Lyons v. Millers Casualty Ins. Co.*, 866 S.W.2d 597, 599 (Tex.1993), for the proposition that when an insurer establishes a reasonable basis for its claim denial, it cannot be liable under the DTPA or the Insurance Code for "statutory post-loss claims handling." Although we agree, Matthew's complaint (under this point of error) is not for post-loss claims handling, but for pre-loss misrepresentation of coverage.

■ We cannot agree, however, that this declarations page constitutes misrepresentation. Texas cases hold that an endorsement to a policy prevails over inconsistent printed provisions of the policy. *See, e.g., National Union Fire Ins. Co. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex.1991); *Gomez v. Hartford Co.*, 803 S.W.2d 438, 440–42 (Tex. App.—El Paso 1991, writ denied); *United States Fire Ins. Co. v. Aetna Casualty & Sur. Co.*, 781 S.W.2d 394, 399 (Tex.App.—Houston [1st Dist.] 1989, no writ); *Tarrant County Ice Sports, Inc. v. Equitable General Life Ins. Co.*, 662 S.W.2d 129, 131 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e). As stated in *Parkins v. Texas Farmers Ins. Co.*, 645 S.W.2d 775 (Tex.1983), "Rather than proving a misrepresentation on the part of [Home], [Matthews] has instead only shown that he fell within an exclusion of his policy." *Id.* at 777.

Matthews contends his misrepresentation claim is good under *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20 (Tex.1990). We disagree. This case is distinguishable and therefore not controlled by *Black*. In *Black*, an employer purchased auto insurance on an employee's truck that covered the truck only when it was used for business purposes. The employer gave the employee, Daniel, a card provided by Lloyds, which stated, "This policy complies with the compulsory auto laws of the State of Texas." *Id.* at 24. Of course, the policy did not do so because it did not cover the truck when used for non-business purposes, as it was when Daniel's daughter wrecked it. The employee, Daniel, sued Lloyds, claiming Lloyds had misled him into thinking he was insured when he was not. By a 5–4 vote, the supreme court agreed that this stated a claim for misrepresentation, but it emphasized facts that are not present here. In *Black*, it was "undisputed that the insurance card was the only representation made by Victoria Lloyds to Daniel concerning the scope of the insurance coverage." *Id.* The insurance card said nothing about any policy exclusion, and Daniel never knew about it. Here, Matthews not only knew of the endorsement excluding prior acts, he signed it, and the declarations page he received listed it. Matthews signed the same endorsement the next year when he renewed the policy. Moreover, the supreme court repeatedly emphasized "the combined effect" of the insurance card and Daniel's affidavit, in which Daniel mentioned "conversations" where his employer stated the policy covered both business and personal use. *Id.* at 24–26. Here, there is no evidence of any oral representation, much less oral misrepresentation, by Home to Matthews concerning the policy.

We conclude that the "claims made" statement on the declarations page is not a misrepresentation because the prior acts exclusion endorsement that Matthews signed only six days before is specifically listed on the declarations page. The same evidence and authorities that defeat the other claims also defeat this one. Thus, the motion addressed this claim.

Point of error five is overruled.

In point of error one, Matthews contends generally that the trial court erred in granting summary judgment for each of the reasons stated specifically in points of error two through five. Having overruled those points of error, we also overrule point of error one.

The judgment is affirmed.

APPENDIX 1

## Declarations
Professional Liability Insurance Policy

Policy Number    LPL-F577042-0

_000015

**This is a claims made Policy. Please review the Policy carefully.**

The Policy is limited to liability for only those claims that are first made against the Insured during the policy period.

Insured by the stock company below and hereinafter called the company

The Home Insurance Company of Indiana   Indianapolis, Indiana

Item 1. Named Insured and Address *(number, Street, Town or City, County, State, Zip Code)*

GUY E. MATTHEWS AND ASSOCIATES

1800 AUGUSTA DRIVE
SUITE 300
HOUSTON                    HARRIS
TX   77057

And Those Professionals Listed on the Application.

Producer Name

DANIELS-HEAD INSURANCE AGENCY INC.

Item 2. Policy Period

| From (Day-Mon-Yr) | To (Day-Mon-Yr) |
|---|---|
| 04-may-1990 | 04-may-1991 |

12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

Item 3. Form of Named Insured's Business

Insured is        Individual

Item 4. Limit of Liability

| Each Claim  $ | 500,000 |
| Aggregate   $ | 1,000,000 |

Item 5. Deductible

| Per Claim   $ | 10,000 |

Item 6. Premium

PREMIUM,       $4,808.00

FINANCED

NO. OF PROFESSIONALS    4

Item 7. Forms Attached at Issuance

H36581 05/86
H36601 10/88
H37530 09/89
H37683 10/88
H37973 07/89
H35497 03/87

By acceptance of this policy the insured agrees that the statements in the Declarations and the Application and any attachments hereto are the insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

Do Not Write In This Box

Remarks

Countersigned at

AUSTIN, TX

Authorized Representative

Issue Date

14-jun-1990

Countersign Date

06-14-90

AWD 7-16-90

H37809F (C) Ed. 6-90

COPY

APPENDIX 2          _00001E

## Prior Acts Exclusion Endorsement

H35497F
Rev. 3-87

The following information is required only when this endorsement is issued subsequent to preparation of policy.

| Named Insured | Policy Number | Endorsement Number | Effective Date |
|---|---|---|---|
| Matthews and Associates | | | |

In consideration of the premium charged, it is hereby understood and agreed that this policy specifically excludes loss resulting from claims made against any insured arising from any acts, errors, omissions, or personal injuries occurring or alleged to have occurred prior to ___5/4/90___

I/We hereby understand and agree to the above.

DHIA⬦TX

JUN 13 1990

Signature of partner, officer or sole proprietor          Date
6-8-90

All other terms and conditions remain unchanged.

Authorized Representative