United States Court of Appeals,
Fifth Circuit.

No. 95-50924.

CANUTILLO INDEPENDENT SCHOOL DISTRICT, Plaintiff-Appellee,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,
Defendant-Appellant.

Nov. 13, 1996.

Appeal from the United States District Court for the Western District of Texas.

Before DUHÉ, JONES and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

National Union Fire Insurance Company ("National Union") sought a declaratory judgment that it had no duty under a contract of insurance to defend or indemnify Canutillo Independent School District ("Canutillo") against certain claims brought by third parties. Canutillo counterclaimed for breach of those duties, breach of the duty of good faith and fair dealing, gross negligence, and violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act ("DTPA"). After realigning the parties, the district court granted partial summary judgment in favor of Canutillo on the duties to defend and indemnify, and a jury awarded damages in favor of Canutillo on the remaining claims. National Union now appeals. We reverse both the district court's grant of summary judgment and the jury award and render judgment in favor of National Union.

I

1

Canutillo purchased a School Leaders Errors and Omissions Policy ("Policy") from National Union. Under the Policy, National Union agreed to indemnify Canutillo for damages resulting from certain legal claims against it and to defend any action or suit against Canutillo covered by the Policy.

In 1991, the parents of five second-grade girls alleged that their children had been sexually abused by Tony Perales ("Perales"), a health and physical education teacher at Canutillo Elementary School. Perales was later tried and convicted for his offenses. The fact of Perales's sexual molestation is undisputed in this appeal.

Canutillo notified National Union of the abuse and requested that it defend Canutillo against any potential lawsuits by the families of the victims. Prior to the onset of litigation, the families offered to settle all claims against Canutillo for $30,000 per family, or a total of $150,000. Canutillo rejected the settlement, and the families filed suit against the school district in the Western District of Texas asserting claims under state law and 42 U.S.C. § 1983. The lawsuit was styled *Mendoza v. Canutillo I.S.D.,* Civil Action No. EP-91-CA-322 (W.D.Tex.) ("*Mendoza* "). Canutillo then contacted National Union and again demanded that National Union defend it under the Policy. National Union, however, denied coverage and refused to assume representation, expressly relying on the Policy's exclusions for claims arising out of criminal conduct, assault, battery, and bodily injury.

National Union consulted attorney James L. Gallagher

2

("Gallagher") for an expert opinion as to whether the Policy covered the *Mendoza* claims. Gallagher concluded that National Union did not have a duty to defend Canutillo under the Policy and recommended that National Union file a declaratory judgment action. Rather than file such an action immediately, however, National Union offered to defend Canutillo, provided that Canutillo waive any bad faith claims against it. Canutillo, however, declined the offer and proceeded to defend the litigation without National Union's representation.

The *Mendoza* plaintiffs twice amended their complaint during the course of the litigation. The second amended complaint abandoned the state law tort claims and the § 1983 claim against Canutillo, asserted a § 1983 claim against Perales, and sought damages as well as declaratory and injunctive relief against Canutillo under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688.[1] Given the substantial differences between the first and second amended complaints, National Union again consulted Gallagher concerning its duties and liabilities under the Policy. Gallagher concluded that while the Policy did not cover suits for money damages arising out of Perales's sexual abuse, National Union had a duty to defend Canutillo on the basis of the

---

[1]During the pendency of the *Mendoza* litigation, the Supreme Court in *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), ruled that a plaintiff may recover money damages for a teacher's sexual abuse of a student in a private cause of action under Title IX.

nonpecuniary claims asserted under Title IX.[2]  National Union therefore assumed Canutillo's defense for the remainder of the litigation, but reserved its right to seek a declaratory judgment with respect to its duty to indemnify Canutillo.

Canutillo settled the *Mendoza* claims on the eve of trial for a total of $1,040,000.  Canutillo paid $40,000 in partial satisfaction of the judgment, and National Union purchased the remainder of the judgment from the *Mendoza* plaintiffs for $1 million.  National Union thus stepped into the shoes of the *Mendoza* plaintiffs and became a judgment creditor of Canutillo.  The settlement agreement conditioned National Union's right to recover the $1 million paid in purchase of the judgment on the outcome of a subsequent declaratory judgment action.

National Union exercised its right under the settlement agreement and filed a declaratory judgment action against Canutillo.  Canutillo counterclaimed seeking (1) a judgment declaring that the Policy covers the *Mendoza* claims;  (2) contract damages, including both the costs of defending the *Mendoza* claims before National Union assumed Canutillo's defense and the $40,000 paid in partial satisfaction of the settlement;  and (3) money damages for National Union's alleged breach of the duty of good faith and fair dealing and violations of the DTPA and article 21.21

---

[2]Endorsement 41267 to the Policy expanded Canutillo's coverage by deleting exclusion (d) of the standard printed policy. Exclusion (d) provided that the Policy "does not apply to any claims for nonpecuniary relief;  however, the Company shall defend such claims in accordance with Insuring Agreement 2 subject to an aggregate limit of $100,000."

of the Texas Insurance Code. The district court realigned the parties, casting Canutillo as plaintiff and National Union as defendant.

Both parties moved for summary judgment on the issues of whether National Union had a duty to defend Canutillo prior to the filing of the second amended complaint and whether National Union had a duty to indemnify the school district for damages paid in settlement of the action. One week before trial, the district court, without opinion, entered partial summary judgment in favor of Canutillo on both issues.

The case therefore proceeded to trial on the remaining issues of contract damages, alleged breaches of the duty of good faith and fair dealing, and for violations of the Insurance Code and the DTPA. The jury found against National Union on every issue and found that the insurer had acted with gross negligence in refusing to represent to the school district. The jury awarded actual damages of $33,162 for Canutillo's defense costs, $40,000 for its share of the *Mendoza* settlement, and more than $7 million in punitive damages.

After the verdict, National Union moved for reconsideration of the district court's summary judgment rulings. The court withdrew its earlier orders and issued an opinion that again granted summary judgment in Canutillo's favor on the duty-to-defend issue. Noting that the duty to indemnify, unlike the duty to defend, is determined by the actual facts that underlie and result in liability, the court reopened the record and ordered the parties to

5

submit further evidence and briefing. After consideration of the parties' submissions, the court issued a second opinion granting summary judgment in favor of Canutillo on the issue of National Union's duty to indemnify. *Canutillo Indep. School Dist. v. National Union Fire Ins. Co.,* 900 F.Supp. 844 (W.D.Tex.1995). The court then entered judgment in favor of Canutillo for $7,173,791.51, plus attorneys' fees. National Union filed motions for judgment as a matter of law and for a new trial, both of which the court denied. National Union now appeals.

II

National Union first contends that the district court improperly granted Canutillo's motions for partial summary judgment on the duty to defend and the duty to indemnify.

A

We review a grant of summary judgment de novo. *Hanks v. Transcontinental Gas Pipe Line Corp.,* 953 F.2d 996, 997 (5th Cir.1993). The district court's interpretation of an insurance contract is a question of law that we also review de novo. *Principal Health Care of La., Inc. v. Lewer Agency, Inc.,* 38 F.3d 240, 242 (5th Cir.1994); *F.D.I.C. v. Mijalis,* 15 F.3d 1314, 1319 (5th Cir.1994).

Texas rules of contract interpretation control in this diversity case. *See Amica Mut. Ins. Co. v. Hoak,* 55 F.3d 1093, 1095 (5th Cir.1995); *Matter of Haber Oil Co., Inc.,* 12 F.3d 426, 443 (5th Cir.1994); TEX.INS.CODE ANN. art. 21.42 (West 1981). Under Texas law, the interpretation of insurance contracts is governed by

6

the same rules that apply to contracts generally. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). The terms used in an insurance policy are to be given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense. *Security Mut. Cas. Co. v. Johnson,* 584 S.W.2d 703, 704 (Tex.1979). The contract is to be considered as a whole, with each part given effect and meaning. *Forbau,* 876 S.W.2d at 133.

When considering the propriety of a grant of summary judgment in a case involving the construction of an insurance policy, we must determine whether the applicable terms of the policy are ambiguous. *Yancey v. Floyd West & Co.,* 755 S.W.2d 914, 917 (Tex.App.—Fort Worth 1988, writ denied). The determination of ambiguity is a question of law; "it is only through resolution of ambiguities through the resort to extrinsic evidence which creates a question of fact." *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.,* 832 F.2d 1358, 1364 (5th Cir.1987). A contract is ambiguous if it is reasonably susceptible of two different meanings. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). When the terms of an insurance policy are clear and unambiguous a court may not vary those terms. *Royal Indem. Co. v. Marshall,* 388 S.W.2d 176, 181 (Tex.1965).

Although the insured bears the burden of showing that the claim against it is potentially within the policy's coverage, *Sentry Ins. v. R.J. Weber,* 2 F.3d 554, 556 (5th Cir.1993), the insurer bears the burden of establishing that an exclusion in the

7

policy constitutes an avoidance of or affirmative defense to coverage. TEX.INS.CODE art. 21.58(b). Exceptions and limitations in an insurance policy are strictly construed against the insurer. *Kelly Assoc., Ltd. v. Aetna Cas. & Sur. Co.,* 681 S.W.2d 593, 596 (Tex.1984). Therefore, "we must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 666 (Tex.1987) (quoting *Glover v. National Ins. Underwriters,* 545 S.W.2d 755, 761 (Tex.1977)). These special rules favoring the insured, however, are applicable only when there is an ambiguity in the policy; if the exclusions in question are susceptible to only one reasonable construction, these rules do not apply. *Puckett v. United States Fire Ins. Co.,* 978 S.W.2d 936, 938 (Tex.1984); *National Union Fire Ins. Co. v. Hudson Energy Co., Inc.,* 811 S.W.2d 552, 555 (Tex.1991).

B

In determining whether an insurer has a duty to defend an insured against a third-party complaint, Texas courts follow the "eight corners" or "complaint allegation" rule. *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.,* 1 F.3d 365, 369 (5th Cir.1993). This rule "requires the trier of fact to examine only the allegations in the [underlying] complaint and the insurance policy in determining whether a duty to defend exists." *Id.* It is inappropriate to consider "facts ascertained before the

8

suit, developed in the process of the litigation, or by the ultimate outcome of the suit." *Id.* (quoting *American Alliance Ins. Co. v. Frito-Lay, Inc.,* 788 S.W.2d 152, 153-54 (Tex.App.—Dallas 1990, writ dism'd)).

The duty to defend arises only when the facts alleged in the complaint, if taken as true, "*potentially* state a cause of action within the terms of the policy." *Id.* (quoting *Continental Sav. Ass'n v. United States Fidelity & Guar. Co.,* 762 F.2d 1239, 1243 (5th Cir.) (emphasis in original), *opinion amended on other grounds,* 768 F.2d 89 (5th Cir.1985)). An insurer is obligated to defend an insured as long as the complaint alleges at least one cause of action within the policy's coverage. *Rhodes v. Chicago Ins. Co.,* 719 F.2d 116, 119 (5th Cir.1983).

The duty to defend is determined by examining the latest amended pleading upon which the insurer based its refusal to defend the action. *Rhodes,* 719 F.2d at 120. In the instant case, the relevant pleading is the first amended complaint because National Union assumed Canutillo's representation after the second amended complaint was filed.

In contrast to the duty to defend, the duty to indemnify is not based on the third party's allegations, but upon the actual facts that underlie the cause of action and result in liability. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 25 (Tex.1965); *American Alliance,* 788 S.W.2d at 153-54. In this case, because the parties settled the *Mendoza* litigation out of court, the actual facts resulting in liability were not

9

ascertained.  Therefore, to provide a record for the court, the parties stipulated that the facts as alleged in the second amended complaint were those upon which the district court was to base its determination on the duty to indemnify.  We, too, must limit our inquiry to the facts as alleged in the complaint.  With these rules in mind, we now turn to the Policy and the pleadings.

The general coverage provision of the Policy (the "Errors and Omissions" clause) obligates National Union to indemnify Canutillo for any damages for which Canutillo may become legally obligated to pay as a result of claims brought against it by third parties for any "Wrongful Act ... of the Insured or of any other person for whose actions the Insured is legally responsible...."  The Policy, however,

> does not apply:  (a) to any claim *involving allegations of ... criminal acts or omissions*;  ... (b) to any claims *arising out of* (1) false arrest, *detention* or imprisonment;  ... [or] (3) *assault or battery*;  ... [and] (c) to any claim *arising out of bodily injury* to, or sickness, disease or death of any person....

(emphasis added).

The *Mendoza* plaintiffs' original amended complaint alleged five causes of action against the school district and against individual employees other than Perales:

(1) a 42 U.S.C. § 1983 claim alleging violations of various Fourteenth Amendment rights based on the defendants' failure to prevent Perales' sexual abuse;

(2) negligence and gross negligence in failing to prevent Perales' sexual abuse;

(3) breach of an affirmative duty to provide for the protection of the children;

(4) intentional infliction of emotional distress;  and

10

(5) the tort of detention, based on allegations that the school district held the children against their will and prevented their escape from the sexual abuse by Perales.[3]

The plaintiffs' second amended complaint dropped the state law tort claims and the § 1983 claim against Canutillo. Instead, they asserted a Title IX claim against the school district based on its failure to prevent Perales's abuse and its failure to implement grievance policies and procedures as required under the regulations implementing Title IX. 34 C.F.R. § 106.8(b) ("A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part").

In its motions for summary judgment, National Union asserted that each of the cited policy exclusions supported its refusal to defend Canutillo and obviated its duty to indemnify it for damages paid in settlement of the Title IX claim. The district court, however, held that National Union was obligated to defend Canutillo based on the fourth cause of action—intentional infliction of emotional distress—because (a) a claim for intentional infliction of emotional distress does not allege criminal conduct; (b) it is unclear under Texas law whether mental anguish constitutes bodily injury, and any doubt must be construed against the insurer; and (c) the actions of the other teachers against whom the claim of intentional infliction of emotional distress was asserted did not "arise out of" the conduct of Perales for the purposes of the

---

[3]The parties do not dispute that exclusion (b)(1) precludes coverage for the *Mendoza* plaintiffs' fifth cause of action for detention.

11

assault and battery exclusion. In its second summary judgment opinion, the court held that National Union must indemnify Canutillo because the Title IX claim asserted against it arises out of the omissions of the school district, not Perales's sexual assaults.

At the outset, we note that the sexual assaults constitute criminal acts under Texas law. Under the plain language of the policy, any claim "involving" allegations of Perales's criminal acts is therefore excluded under exclusion (a). Because Perales's acts also constitute assault and battery,[4] any claim "arising out of" his actions is excluded under exclusion (b)(3). Furthermore, both complaints allege that the children suffered physical injury as a result of the sexual molestation; any claim "arising out of" that physical injury is also excluded under exclusion (c).[5] The

---

[4]A person commits assault and battery when he "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." TEX.PENAL CODE ANN. § 22.01(a) (West 1994); *Childers v. A.S.,* 909 S.W.2d 282, 292-293 (Tex.App.—Fort Worth 1995, no writ). "The definition of an assault is the same whether it is the subject of a criminal prosecution or a civil suit for damages." *Hogenson v. Williams,* 542 S.W.2d 456, 457 (Tex.App.—Texarkana 1976, no writ).

[5]The parties dispute whether mental anguish constitutes "bodily injury" for the purposes of the bodily injury exclusion. The district court focused on the fact that mental anguish does not constitute "bodily injury" when it held that exclusion (c) did not apply to the claim for intentional infliction of emotional distress. The court relied on our decision in *Travelers Indem. Co. v. Holloway,* 17 F.3d 113, 115 (5th Cir.1994), in which we held that mental anguish alone does not constitute "bodily injury" under Texas law. *Holloway,* however, is inapposite in that the complaint at issue intimated no allegation whatsoever of physical injury, but only allegations of emotional anguish and trauma. *Id.; see also Miller v. Windsor Ins. Co.,* 923 S.W.2d 91, 97 (Tex.App.—Fort Worth 1996, writ requested) ("It is well established that mental anguish

complaints are replete with explicit allegations of Perales's sexual molestation; our inquiry therefore focuses solely on the import of the nexus phrases in the exclusions.

The district court held that the nexus phrases do not preclude coverage for claims against the school district and persons other than Perales. We disagree. The district court erred in focusing on the formal causes of action asserted rather than upon the factual allegations supporting the claims.

Relying on *Truman v. United States,* 26 F.3d 592 (5th Cir.1994), the court reasoned in its first summary judgment opinion as follows:

> In *Truman,* the court considered "arising out of" language [in the assault and battery exclusion to the United States's waiver of sovereign immunity in the Federal Torts Claims Act ("FTCA")] similar to that contained in the insurance policy in the case at bar. There the court found that because the claim for intentional infliction of emotional distress is not

and loss of consortium damages suffered by one not involved in an actual accident are not bodily injuries."). The original *Mendoza* complaint does, in fact, claim physical injuries sustained by the children. Texas law subsequent to our holding in *Holloway* suggests that when emotional distress is concomitant with manifestations of physical injury, "an allegation of mental anguish implicitly raises a claim for the resulting physical manifestations." *See Trinity Universal Ins. Co. v. Cowan,* 906 S.W.2d 124, 130-31 (Tex.App.—Austin 1995, writ granted).

*Cowan,* however, offered an expansive interpretation of "bodily injury" to provide coverage for the insured, not to exclude it. Moreover, the mental anguish in *Cowan* was itself the source of the physical injuries, causing "headaches, stomachaches, and loss of sleep as a result of [the] emotional distress." We consequently decline to extend *Cowan* to the facts in this case, especially where to do so is unnecessary to the disposition of the appeal. Even if mental anguish is not "bodily injury" such that a claim "for" mental anguish is not excluded, the Policy is broader, precluding coverage for a claim for intentional infliction of emotional distress if it merely "aris[es] out of" bodily injury.

13

a claim for assault, battery or slander the claim was not excluded by the FTCA.

Thus, the court concluded that the *Mendoza* plaintiffs' claim was likewise not excluded under the Policy.

Our holding in *Truman,* however, does not stand for the proposition that a claim for intentional infliction of emotional distress can never "arise out of" an assault and battery. On the contrary, we emphasized the need to examine the underlying conduct alleged in the petition; "[e]ven if a plaintiff styles a claim so that it is not one that is enumerated in [the exclusions], the plaintiff's claim is still barred "when the underlying ... conduct "essential" to the plaintiff's claim can fairly be read to "arise out of" conduct that would establish an excepted cause of action.' " *Id.* at 594 (citing *McNeily v. United States,* 6 F.3d 343, 347 (5th Cir.1993)); *cf. Garcia v. United States,* 776 F.2d 116 (5th Cir.1985) (barring FTCA claim against the government for negligent supervision of military recruiter who sexually assaulted plaintiff). In *Truman,* the plaintiff's claim for intentional infliction of emotional distress did not "arise out of" an assault and battery because the plaintiff had never been assaulted. By contrast, the first amended *Mendoza* complaint clearly and repeatedly alleges that the plaintiffs were sexually assaulted and physically abused by Perales. The district court nonetheless asserted that

> there were allegations of facts that might give rise to the conclusion that assault, battery or bodily injury may have occurred, but not at the hands of other teachers, on whom the claim of intentional infliction of emotional distress is laid. *What Perales did or did not do is not relevant in any way to*

14

*the conduct of the other teachers.* There is no indication of any physical contact by other teachers that might give rise to one of the exclusions.... [T]he pleadings stated a cause of action based on the conduct of other teachers separate from the actions of Perales; the conduct of other teachers was not excluded by the plain language of the policy.

Order at 7 (emphasis added).

Texas courts, however, when determining whether an exclusion in an insurance contract applies, examine the factual allegations showing the origin of the damages rather than the legal theories asserted by the plaintiff. *Duncanville Diagnostic Ctr., Inc. v. Atlantic Lloyds Ins. Co. of Tex.,* 875 S.W.2d 788, 789 (Tex.App.—Eastland 1994, writ denied); *Adamo v. State Farm Lloyds Co.,* 853 S.W.2d 673, 676 (Tex.App.—Houston [14th Dist.] 1993, writ denied), *cert. denied,* --- U.S. ----, 114 S.Ct. 1613, 128 L.Ed.2d 340 (1994) (same); *Burlington Ins. Co. v. Mexican American Unity Council, Inc.,* 905 S.W.2d 359, 360 (Tex.App.—San Antonio 1995, no writ) (same). Where the legal claims asserted by the plaintiffs are not independent and mutually exclusive, but rather related to and dependent upon excluded conduct, the claims are not covered, even if asserted against an insured who did not himself engage in the prohibited conduct. *Burlington Ins. Co.,* 905 S.W.2d at 362.

For example, in *Fidelity & Guaranty Insurance Underwriters, Inc. v. McManus,* 633 S.W.2d 787 (Tex.1982), the Texas Supreme Court held that a claim for negligent entrustment of a vehicle arose out of the "use ... of any recreational motor vehicle owned by the insured" and was therefore excluded from coverage, even though the insured was not himself using the vehicle at the time the accident occurred. "Essential to recovery ... is negligent entrustment by

15

the owner or custodian of the instrumentality, plus its negligent operation or use by the entrustee. Whether the entrustment is to an insured or non-insured, the plaintiff must still show negligent operation or use ... as an element of the cause of action." *Id.* at 790.

Similarly, in *Garrison v. Fielding Reinsurance, Inc.,* 765 S.W.2d 536, 537 (Tex.App.—Dallas 1989, writ denied), the court rejected the contention that because the underlying complaint alleged negligence on the part of the insured rather than assault and battery, the suit did not involve a "claim arising out of assault and battery" for the purposes of the exclusion at issue. The court held that the claims for negligence were excluded from coverage under the unambiguous terms of the policy where the plaintiffs "would never have brought a lawsuit against [the insured] absent the assault and battery committed by the unknown assailant." *Id.* at 538.

Furthermore, in *Duncanville Diagnostic Center,* 875 S.W.2d at 792, the parents of a girl who died after receiving negligent medical treatment sued the insured medical center for negligent hiring, training, supervision, and failure to institute adequate policies and procedures. A professional services exclusion to a general liability policy precluded coverage for the actual acts of malpractice. The Texas appellate court held that where the injuries alleged in the complaint would not have occurred but for the malpractice, the derivative claims against the insured were also excluded. *Accord Burlington Ins. Co.,* 905 S.W.2d at 362

(barring coverage for negligence claim under assault and battery exclusion where there would have been no basis for suit absent assault and battery); *Centennial Ins. Co. v. Hartford Accident and Indem. Co.,* 821 S.W.2d 192, 194 (Tex.App.—Houston [14th Dist.] 1991) (finding no coverage for claim of negligent hiring where negligent hiring, by itself and without excluded conduct of employee, would not give rise to cause of action against employer); *see also Old Republic Ins. Co. v. Comprehensive Healthcare Assoc., Inc.,* 2 F.3d 105, 109 (5th Cir.1993) (holding that negligence and slander claims against insured were not covered where underlying intentional sexual harassment by insured's agent was excluded); *Columbia Mut. Ins. Co. v. Fiesta Mart, Inc.,* 987 F.2d 1124, 1128 (5th Cir.1993) (holding that where liability of insured and liability of its agent were "related and interdependent," court must look to whether agent's fraud was covered by policy); *cf. Commercial Union Ins. Co. v. Roberts,* 7 F.3d 86, 89-90 (5th Cir.1993) (holding that claim against doctor for failing to take precautions against his own pedophilia was excluded where there would have been no injury absent underlying sexual molestation).

We find that Texas law is clear: where a claim against an insured would not exist "but for" conduct explicitly excluded by the policy, the dependent claims are also not covered under the policy, regardless of whether the insured against whom the derivative claims are directed actually engaged in the excluded acts. The language in the exclusions at issue in this appeal do

17

not warrant limiting the application of this rule.[6]

When we examine the factual allegations giving rise to the damages in this case, we find that they clearly contradict the district court's holding that the claims alleged in the first *Mendoza* complaint are independent of Perales's actions. The gravamen of the first three causes of action in the first complaint is that the school district and the individual defendants were negligent in their supervision of Perales, that they failed to protect the children from Perales's actions, and that they failed to implement policies and procedures that would have prevented or detected Perales's conduct.[7] The negligence and failure to protect

---

[6]We recognize that the policy provision in this case differs in varying degrees from the provisions construed in the cases cited above; some of the provisions are arguably broader, some are certainly narrower. The exclusion construed in *McManus,* for example, was narrower, stating simply that coverage "shall not apply ... to the ... use [of] any recreational motor vehicle," rather than to any claim "arising out of" such use. The words "arising out of" are not "words of narrow and specific limitation, but are broad, general, and comprehensive terms.... They are ordinarily understood to mean "originating from,' "having its origin in,' "growing out of,' or "flowing from,' or in short, "incident to,' or "having connection with'...." *Red Ball Motor Freight v. Employers Mut. Liab. Ins. Co.,* 189 F.2d 374, 378 (5th Cir.1951).

[7]The fact that the Mendoza plaintiffs alleged a cause of action under § 1983 does not change the character of the claim; the factual allegations underlying the damages control, not the formal cause of action asserted. *See, e.g., Burlington Ins. Co.,* 905 S.W.2d at 360. At its core, § 1983 is a statutory means of holding governmental entities legally responsible for the actions of their employees where the governmental entity somehow "caused" the employee to harm another. *Monell v. Department of Social Serv.,* 436 U.S. 658, 691-692, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). The *Mendoza* plaintiffs sought to satisfy the causation element of the cause of action by asserting that Canutillo "failed to develop and maintain a complete program of detection and prevention of child abuse." While there are certainly vast differences between a § 1983 claim and a common law claim for

18

would not themselves have been actionable where the only damages alleged stem from Perales's sexual abuse. Furthermore, with respect to the claim for intentional infliction of emotional distress, the *Mendoza* plaintiffs specifically alleged that "Defendants' conduct was the proximate cause of serious harm to the children as specified above in paragraph 25." Paragraph 25 states that "Defendants' actions and inactions have caused plaintiffs to be assaulted and harmed...." Moreover, the complaint sets forth in graphic detail the sexual assaults committed by Perales and alleges that the other teacher-defendants "creat[ed] a hostile and threatening atmosphere discouraging the children from making complaints of the abuse they suffered...." While the teachers' failure to adequately respond to the children's complaints of abuse may have exacerbated the emotional injuries of the children, there clearly would have been no injury at all absent that abuse. Therefore, under Texas law, Perales's abuse and the claims asserted in the first amended complaint are not independent and mutually exclusive but rather related and interdependent.

With respect to the *Mendoza* plaintiffs' second amended complaint, we find that the Title IX claim asserted against Canutillo is likewise related to, and dependent upon, Perales's criminal sexual assault.[8] The basic thrust of the plaintiffs'

_____

negligent failure to establish policies and procedures such as that excluded in *Duncanville Diagnostic Center,* none are relevant to the interpretation of the Policy. In both cases, but for the excluded conduct, there would have been no basis for liability.

    [8]Title IX states, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from

19

claim was that the school district failed to prevent Perales's abuse and failed to implement grievance policies and procedures as required under the regulations implementing Title IX. 34 C.F.R. § 106.8(b).

The district court, citing *Rosa H. v. San Elizario Independent School District,* 887 F.Supp. 140 (W.D.Tex.1995), held that although liability under Title IX for sexual misconduct by a teacher requires two distinct actions, one on the part of the employee and one on the part of the school district, "it is the conduct of the school district which gives rise to the cause of action and is at the heart of any Title IX claim." 900 F.Supp. at 847.[9] The court continued:

> A suit under Title IX alleges that the school district has failed to implement policies or procedures to prevent or discover incidents of sexual discrimination or, as in *Rosa H.,* that once the discrimination has been discovered [it] failed to act in an appropriate manner. In other words, the suit alleges that Canutillo made an error or omission by failing to comply with Title IX. Tony Perales did not violate Title IX. While his conduct was certainly discriminatory, without some action by Canutillo the cause of action under Title IX cannot be sustained.... The Title IX claim does not "arise out of"

---

participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance...." 20 U.S.C. § 1681(a) (1990). The Supreme Court has determined that a private right of action is implied under Title IX, and a private plaintiff may receive monetary damages as well as injunctive and declaratory relief. *Franklin,* 503 U.S. at 75, 112 S.Ct. at 1037-38.

[9]The court in *Rosa H.* correctly noted that this court has yet to address the proper standard for imputed liability under Title IX. *Cf. Leija v. Canutillo I.S.D.,* 887 F.Supp. 947 (W.D.Tex.1995) (imposing strict liability on the school district for teacher's sexual abuse of student). We need not determine the proper standard here since under either a negligence or strict liability regime, the *Mendoza* plaintiffs' Title IX claims "arises out of" Perales's sexual assaults.

20

> the conduct of Tony Perales, it arises out of the inactions of Canutillo, thus the exclusion does not apply.

*Id.* at 847-48.

When we look past the formal cause of action asserted to the factual allegations of the complaint, however, we again fail to discern a relevant difference between a statutory Title IX cause of action in this instance and the common law claim for negligent failure to institute adequate policies and procedures excluded from coverage in *Duncanville Diagnostic Center.* Moreover, we note that although a separate act or omission on the part of Canutillo may be necessary for liability under Title IX, it is not *sufficient* for recovery under the statute. There must have been some discriminatory act on the part of the school district or its agents. *Rowinsky v. Bryan Ind. Sch. Dist.,* 80 F.3d 1006, 1008 (5th Cir.1996), *cert. denied,* --- U.S. ----, 117 S.Ct. 165, --- L.Ed.2d ---- (1996). In *Rowinsky,* we held that allegations of peer sexual harassment were insufficient to form the basis of a cause of action under Title IX absent allegations that the school district itself or one of its employees discriminated on the basis of sex. Allegations that the school district condoned the harassment by failing to respond to the victim's complaints were not themselves acts of discrimination absent a showing that the school district responded to complaints of harassment differently on the basis of sex. *Id.* at 1016. The *Mendoza* complaint alleges no act of sexual discrimination on the part of the school district other than Perales's acts. The complaint does not allege that the school district responded to complaints of sexual abuse from girls any

21

differently than claims from boys.  Furthermore, we note that while injunctive relief may be available for failure to adopt Title IX's grievance policies and procedures, such a failure is not itself an act of discrimination that may form the basis of an award of damages.  *Seamons v. Snow,* 84 F.3d 1226, 1233 (10th Cir.1996). Therefore, "but for" Perales's actions, there would have been no basis for damages under Title IX.

Canutillo nonetheless defends the district court's decisions on two distinct grounds.  First, it contends that National Union's interpretation of the Policy would render the Errors and Omissions clause meaningless because National Union would never be obligated to pay damages on behalf of its insured.

We agree that an interpretation is unreasonable if it would strip a provision of meaning.  *Lafarge Corp. v. Hartford Casualty Ins. Co.,* 61 F.3d 389, 396 (5th Cir.1995); *Ideal Mut. Ins. Co. v. Last Days Evangelical Assoc.,* 783 F.2d 1234, 1238 (5th Cir.1986). National Union, however, offers several examples of claims for which it would be liable to indemnify Canutillo.  For example, wrongful termination claims seeking compensatory damages would fall within the Errors and Omissions clause of the Policy,[10] as would Title IX claims seeking monetary damages that do not arise out of

---

[10]Claims for backpay are specifically excluded under exclusion (f).  Claims for compensatory damages for reputational harm, however, would be covered by the Policy.  We disagree with Canutillo's assertion made at oral argument that reputational harm constitutes "bodily injury" under National Union's interpretation of the Policy.

22

a sexual assault or other criminal act.[11]  Other examples include claims for damages under the Americans with Disabilities Act, 20 U.S.C. §§ 1400 *et seq.,* claims for copyright infringement, and constitutional claims for discrimination other than on the basis of race or national origin.[12]  We need not set forth an exhaustive list of hypotheticals to conclude that the Errors and Omissions clause is still meaningful under National Union's interpretation.  *See Celestino v. Mid-American Indem. Ins. Co.,* 883 S.W.2d 310, 313 (Tex.App.—Corpus Christi 1994, writ denied) (stating that unambiguous exclusion must be given effect unless it wholly repugns more general provision).  We therefore find National Union's interpretation reasonable.

Second, Canutillo asserts that even if National Union's interpretation is a reasonable one, its own interpretation is also reasonable, thus demonstrating that the Policy is ambiguous.  Therefore, the district court properly construed the exclusions in its favor.  We disagree.

Canutillo proffers an alternative construction of the Policy's exclusions that would preclude coverage only when the acts subject

---

[11]For example, the Policy would cover damages paid as a result of Title IX claims based on non-assaultive sexual harassment or exclusion from sports programs on the basis of sex.

[12]Exclusion (j) excepts claims "arising out of discrimination because of race or national origin, or failure to integrate or desegregate," but provides for defense of such claims up to $50,000.  We note that a later endorsement, however, provides that the exclusion will not apply to claims of discrimination on the basis of race or national origin brought by or on behalf of an *employee.*  Therefore, compensatory damages paid as a result of such claims may also be covered.

23

to the exclusion were committed by the insured.[13]  The policy defines the "Insured" to include the school district, members of the board of education, trustees, and persons who hold administrative positions such as superintendent and principal.  By endorsement, the parties amended the definition of insured to include "any employee of the School District while acting within the scope of his or her duties as such."  Canutillo contends that because Perales was not acting within the scope of his duties when he committed the sexual abuse, he was not an insured for the purposes of the exclusion.  Therefore, Canutillo asserts, claims arising out of his actions are covered by the Policy and trigger a duty to defend.

The plain language of the Policy, however, demonstrates that Canutillo's construction of the Policy is unreasonable as a matter of law.  In Texas, "[i]t is a long-established rule that "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions.' "  *Forbau,* 876 S.W.2d at 134 (quoting *Guardian Trust Co. v.*

---

[13]Canutillo cites *Southern Farm Bureau Casualty Co. v. Adams,* 570 S.W.2d 567 (Tex.App.—Corpus Christi 1978, writ ref'd n.r.e.), and *Heyward v. Republic National Life Insurance Co.,* 527 S.W.2d 807 (Tex.App.—San Antonio 1975), *aff'd,* 536 S.W.2d 549 (Tex.1976), in support of this construction.  We find that *Heyward* is factually distinguishable.  Furthermore, the appeals court in *Adams* held that an insurance policy provided coverage for a negligence claim against the insured for damages caused by a crop duster hired by the insured, notwithstanding a provision in the policy excluding any loss "arising out of the ... use ... of any aircraft," since the insured did not personally use the aircraft.  We find that this holding directly conflicts with the Texas Supreme Court's opinion in *McManus* decided four years later, and find *McManus* and its progeny controlling.

24

*Bauereisen,* 132 Tex. 396, 121 S.W.2d 579, 583 (1938)). Because the exclusions expressly modify the Errors and Omissions clause, we must look at the exclusions with reference to the more general provision. The blanket coverage provision specifically states that National Union will pay damages resulting from any wrongful act "of the Insured *or of any other person for whose actions the Insured is legally responsible*...." The exclusions do not otherwise limit their effect to acts of the insured alone. Since National Union indemnifies Canutillo for the acts of those persons for whom the district is legally responsible, then in the absence of language limiting the exclusions, the policy likewise precludes coverage for excluded acts committed by such persons. *See Tarrant County Ice Sports v. Equitable Gen. Life Ins. Co. of Okla.,* 662 S.W.2d 129, 131-32 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.) (holding that where general coverage provision of policy defined covered "accident" to include assault and battery committed by third parties, later endorsement excluding injuries caused by assault or battery without reference to identity of assaultor necessarily excluded assaults by third-parties as well as by insured).

Moreover, Canutillo's interpretation would render the assault and battery exclusion meaningless. A school district can act only through its agents. As Canutillo points out, however, no agent of the school district will ever act within the scope of his or her duties when committing an assault or battery. The district court opined that if any named insured such as a principal or administrator had committed the sexual abuse, the exclusion would

25

arguably apply. We disagree. The Errors and Omissions clause affords coverage only for wrongful acts committed "in the performance of duties for the School District ...," and a wrongful act is defined as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission committed solely in the performance of duties for the School District...." Because no person commits assault and battery in the performance of his duties, no claim for assault and battery would have been covered by the Policy even absent the assault and battery exclusion, unless it were a derivative claim such as those asserted by the *Mendoza* plaintiffs.[14] Canutillo's interpretation excepting such derivative claims from the reach of the exclusions thus renders the assault and battery clause meaningless and redundant.[15]

---

[14]We recognize that this reasoning does not apply to the bodily injury exclusion. It is possible that a school district employee may inflict bodily injury in the negligent performance of his or her duties for the school district and therefore may be an "Insured" committing a "Wrongful Act" for which damages may be recovered in the absence of exclusion (c). However, the fact that an interpretation of identical language ("arising out of") does not render all exclusions meaningless does not make the interpretation any less unreasonable, nor do we find warrant to apply different interpretations to the language depending upon the exclusion in which they appear. At any rate, the assault and battery exclusion alone is sufficient to preclude coverage for all claims asserted against Canutillo, notwithstanding the effect of the bodily injury exclusion.

[15]We furthermore reject Canutillo's assertion that the policy is somehow ambiguous because it conflicts with Canutillo's expectation that the policy would cover this type of claim. "[N]ot every difference in the interpretation of ... an insurance policy amounts to an ambiguity. Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to create an ambiguity." *Forbau,* 876 S.W.2d at 134. The objective intent of the parties as evidenced in the Policy, when examined under Texas law, excludes from coverage all the claims asserted,

We therefore find that the exclusions to the Policy relied upon by National Union unambiguously preclude coverage for claims that are related to and dependent upon allegations of Perales's criminal sexual assaults. The district court erred in denying National Union's motion for summary judgment and in granting summary judgment in favor of Canutillo with respect to both the duty to defend prior to the filing of the second amended complaint and the duty to indemnify Canutillo for damages paid in settlement

---

notwithstanding Canutillo's subjective expectations. *See Brooks, Tarlton, Gilbert, Douglas & Kressler,* 832 F.2d at 1364 (noting that objective, not subjective, intent controls when the policy is unambiguous).

We also disagree that the interpretation given the identical exclusionary clauses by a North Carolina court in *Durham City Board of Education v. National Union Fire Ins. Co.,* 109 N.C.App. 152, 426 S.E.2d 451 (1993, rev. denied), evidences ambiguity in the Policy. The *Durham* court did not find these clauses to be ambiguous, but rather held that under North Carolina law, claims against a school board for negligent supervision of a coach who raped a student did not "arise out of" the coach's assault. This interpretation, however, directly contradicts settled law in Texas as set forth in *McManus* and its progeny. Merely because North Carolina law differs from that of Texas does not render the policy exclusions ambiguous. *See, e.g., T.C. Bateson Constr. Co. v. Lumbermans Mut. Cas. Co.,* 784 S.W.2d 692, 698 (Tex.App.—Houston [14th Dist.] 1989, writ denied) (rejecting argument that exclusion is ambiguous as matter of law because courts of different states have interpreted it differently); *Union Pacific Resources Co. v. Aetna Cas. & Sur. Co.,* 894 S.W.2d 401, 405 (Tex.App.—Fort Worth 1994, writ denied) (noting split among courts but holding that "[n]either conflicting views of coverage, nor disputation, is sufficient to create an ambiguity"); *Snydergeneral Corp. v. Century Indem. Co.,* 907 F.Supp. 991, 997-98 (N.D.Tex.1995) (finding that Texas courts do not hold policy terms to be ambiguous each time there is split of authority). *But see Pioneer Chlor Alkali Co., Inc. v. Royal Indem. Co.,* 879 S.W.2d 920, 935 (Tex.App.—Houston [14th Dist.] 1994, no writ) (finding that differing interpretations may evidence more than mere dispute between insurer and insured).

27

of the *Mendoza* suit.

                                    III

We furthermore find that Canutillo's claims for breach of the duty of good faith and fair dealing and gross negligence fail as a matter of law. One element of a bad faith claim is an absence of a reasonable basis for denying or delaying payment of benefits. *Texas Farmers Ins. Co. v. Soriano,* 881 S.W.2d 312, 317 (Tex.1994). Because we find that National Union had no duty to defend or to indemnify under the Policy, its denial of coverage for the *Mendoza* claims was reasonable, and there can be no breach of the duty of good faith and fair dealing as a matter of law. *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex.1995).[16] Moreover, the gross negligence claim is predicated on the alleged bad faith breach of the contract; where there was no bad faith, there could be no gross negligence to support an award of punitive damages. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 23 (Tex.1994). Insofar as they are predicated on National Union's alleged bad faith breach, Canutillo's claims under the DTPA and the Texas Insurance Code are similarly meritless. *Stoker,* 903 S.W.2d at 341.

Canutillo, however, urges that the evidence was sufficient to demonstrate that, at the time of purchase, National Union misrepresented the scope of coverage, or at least made misleading

---

[16]The parties dispute whether an insurer owes a duty of good faith and fair dealing to its insured with respect to third-party claims. *See Soriano,* 881 S.W.2d at 317 ("We have never held and do not hold today that either of these two standards applies to insurers in responding to third-party claims"). Because we find that there is no breach, we need not reach this issue.

statements concerning the scope of coverage available under the Policy in violation of § 17.46 of the DTPA and § 21.21 of the Insurance Code. Our determination that National Union had no duty to defend or to indemnify Canutillo is not dispositive of this claim. *Matthews v. Home Ins. Co.,* 916 S.W.2d 666, 670 (Tex.App.—Houston [1st Dist.] 1996, writ denied) (finding that plaintiff's DTPA claims were not precluded by finding of no coverage under policy where claims were "not for post-loss claims handling, but for pre-loss misrepresentation of coverage").

When reviewing a denial of a motion for judgment as a matter of law, we must use the same standard that the district court used in first ruling on the motion—that is, whether there is a legally sufficient evidentiary basis for a reasonable jury to find as it did. FED.R.CIV.P. 50(a)(1); *Hiltgen v. Sumrall,* 47 F.3d 695, 699-700 (5th Cir.1995). We must view the evidence and all reasonable inferences in the light most favorable to the jury's determination. *Id.*

The only claimed misrepresentation or misleading statement is a letter from a representative of National Union sent to Canutillo before it purchased the Policy. The letter stated that the Policy covered, among other things, "[a]lleged violations of federal or state constitutional civil rights." We find that this statement cannot constitute a misrepresentation because, as we noted, the Policy does in fact cover constitutional civil rights claims that are not otherwise excluded, such as claims for sex discrimination that do not arise out of assault, battery, bodily injury, or

29

involve criminal acts. Moreover, a reasonable jury could not find that the statement was misleading where Canutillo was aware of the Policy language at the time of purchase and Canutillo presented no evidence that National Union ever assured it that civil rights claims would be covered under the specific circumstances present here. *See Parkins v. Texas Farmers Ins. Co.,* 645 S.W.2d 775, 777 (Tex.1983) (holding that where insured was, in fact, covered for some fire loss and insured presented no evidence that insurer ever promised coverage against fire loss under circumstances at issue, insured failed to prove misrepresentation); *Matthews,* 916 S.W.2d at 670 (finding no misrepresentation where insured knew of exclusion when he signed policy and alleged no oral misrepresentations concerning coverage under policy for specific loss incurred); *Employers Cas. Co. v. Fambro,* 694 S.W.2d 449, 451 (Tex.App.—Eastland 1985, error refused n.r.e.) (finding that mere fact that insureds believed they were covered under all circumstances in light of insurer's statement that coverage was "adequate" or "sufficient" did not prove misrepresentation). We therefore find that the district court erred in denying National Union's motion for judgment as a matter of law with respect to Canutillo's claims under the DTPA and § 21.21 of the Texas Insurance Code.[17]

## IV

For the foregoing reasons, we REVERSE the district court's

---

[17]Because we find in favor of National Union on all claims, we need not address National Union's contentions regarding evidentiary points of error.

grant of partial summary judgment in favor of Canutillo on the duty to defend and the duty to indemnify, REVERSE the jury's verdict and damage award, and RENDER judgment in favor of National Union.