MARYLAND CASUALTY
COMPANY, Plaintiff,

v.

TEXAS COMMERCE BANCSHARES,
INC., Defendant.

No. 3:94–CV–0960–X.

United States District Court,
N.D. Texas,
Dallas Division.

March 13, 1995.

R. Brent Cooper, Dana E. Harbin, Cooper, Huddleston & Aldous, P.C., Dallas, TX, for plaintiff.

Kenneth S. Carroll, Dallas, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

Before the Court are: Plaintiff's Motion for Summary Judgment and Brief in Support, filed July 29, 1994; Defendant's Response and Cross–Motion for Summary Judgment and Brief in Support, filed August 16, 1994; Plaintiff's Amended Motion for Summary Judgment and Response, filed August 31, 1994; Defendant's Response, filed September 20, 1994; and Plaintiff's Reply, filed October 4, 1994. After carefully considering the motion, briefs, supporting evidentiary submissions, and applicable law, the Court determines that no issues of material fact exist with respect to the issues raised in the motions for summary judgment. As the Court concludes that Plaintiff has no duty to defend or indemnify the Defendant, Plain-

tiff's Motion for Summary Judgment is GRANTED, and Defendant's Cross–Motion for Summary Judgment is DENIED.

## BACKGROUND

This diversity case is a declaratory judgment action under Texas insurance law to determine Plaintiff Maryland Casualty Company's ("Maryland") obligations under general liability insurance policies it issued to Defendant Texas Commerce Bancshares, Inc. ("TCB") between January 17, 1981 and January 20, 1987. TCB's subsidiary bank Texas Commerce Bank–Preston Royal has been sued in a case styled *Mark Goldenberg, Gregg Goldenberg and Cyd Shaw v. Murray A. Goldenberg, Michael D. Ginsberg, Ginsberg & Brusilow, a Professional Corporation, Phillip Vogel & Co., P.C., and Texas Commerce Bank–Preston Royal*, Cause No. 92–9769–M, pending in the 298th Judicial District Court of Dallas County, Texas (the "Goldenberg lawsuit").

The Plaintiffs in the Goldenberg lawsuit are the three children (the "Goldenberg beneficiaries") of Rose Laurie Goldenberg and Murray A. Goldenberg. The parents established a trust for each of their children in 1970, referred to collectively as the "Combined Trust." Trustees for the Combined Trust were Rose Laurie Goldenberg, Murray A. Goldenberg, and Nettie Rosenberg. On February 3, 1971, Rose Laurie Goldenberg established a bank account for the Combined Trust (the "Goldenberg Trust Fund") at Texas Commerce Bank–Preston Royal in Dallas.

According to the Third Amended Original Petition in the Goldenberg lawsuit, after Rose Laurie Goldenberg died on May 16, 1981, TCB allowed the Goldenberg beneficiaries' father, Murray A. Goldenberg, to make numerous unauthorized withdrawals from the Goldenberg Trust Fund. Although Rose Laurie Goldenberg was the only signatory and individual legally authorized to make withdrawals from the Goldenberg Trust Fund, TCB honored checks written out of the Goldenberg Trust Fund by Murray A. Goldenberg. After initial reluctance, TCB also allowed Murray A. Goldenberg, without legal authority, to become a signatory to the Goldenberg Trust Fund, which enabled Murray A. Goldenberg to make the unauthorized withdrawals from the account.

The Third Amended Original Petition alleges that TCB failed to comply with the trust documents of the Combined Trust, which it had in its possession, and aided and abetted Murray A. Goldenberg to defraud the Goldenberg beneficiaries and keep them ignorant of the nature and operations of the Combined Trust. TCB failed to provide the Goldenberg beneficiaries with copies of the Combined Trust Agreement when asked to do so. TCB failed to distribute the trust assets to each beneficiary when he or she reached 21 years of age. TCB had a fiduciary relationship with the Goldenberg beneficiaries as a result of acting in concert with Murray A. Goldenberg to circumvent the requirements of the Combined Trust and the law regarding the use of the Goldenberg Trust Fund. The Goldenberg beneficiaries allege causes of action against TCB for negligence and negligent misrepresentation, gross negligence, conversion, constructive fraud, breach of fiduciary duty, fraud and fraudulent concealment, and conspiracy.

The Goldenberg beneficiaries seek actual damages for the loss of funds from the Goldenberg Trust Fund with interest. They also seek actual damages for lease income from trust rental property, with interest, and unpaid taxes on the property, as well as the difference between the fair market value of the property and its actual sales price, and the cost to repair damage and destruction to the property while in the defendants' control. They seek actual damages for pain and suffering and mental anguish. In addition, the Goldenberg beneficiaries seek exemplary damages from TCB and the other defendants, as well as attorneys fees.

Maryland has filed this suit seeking a declaratory judgment that it has no duty to defend and/or indemnify its insured TCB in the Goldenberg lawsuit because no "bodily injury" or "property damage" has been alleged, which is necessary to trigger coverage under the general liability policies. TCB contends that the allegations indeed trigger coverage under the policies so that Maryland has the duty to defend and/or indemnify it in

the Goldenberg lawsuit. The parties have each moved for summary judgment.

## SUMMARY JUDGMENT

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. Fed.R.Civ.P. 56(c); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law will identify which facts are material. *Id.* at 248, 106 S.Ct. at 2510. The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Russ v. International Paper Co.*, 943 F.2d 589, 591 (5th Cir.1991), *cert. denied*, 503 U.S. 987, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir.1988).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir.1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "[m]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). In short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. The existence of a mere scintilla of evidence will not suffice. *Id.* at 252, 106 S.Ct. at 2512. When the nonmoving party fails to make the requisite showing and the moving party has met its summary judgment burden, the movant is entitled to summary judgment. Fed. R.Civ.P. 56(c); *Campbell v. Sonat Offshore Drilling*, 979 F.2d 1115, 1119 (5th Cir.1992).

## DISCUSSION

Under Texas law, insurance contracts are subject to the same rules of construction as other contracts. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.1987). When the term in question is subject to only one reasonable construction, the policy is unambiguous and must be enforced as written. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984). If the insurance policy is susceptible of more than one reasonable interpretation, the uncertainty is resolved by adopting the construction that most favors the insured. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 554 (Tex.1991). Not every difference in the interpretation of an insurance policy amounts to an ambiguity. Both the insured and insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to create an ambiguity. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994).

An insurer's duty to defend is determined by the allegations of the third party considered in the light of the policy provisions, regardless of the truth or falsity of such allegations. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex.1965); *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973). Texas courts follow the "eight corners" or "complaint allegation" rule when determining the duty to defend, which requires the court to examine only the allegations in the third party's pleading and the insurance policy to determine whether the duty to defend exists. *American Alliance Ins. Co. v. Frito–Lay, Inc.*, 788 S.W.2d 152, 153–54 (Tex.App.—Dallas 1990, writ dism'd). In applying this rule, the court may indulge the most liberal interpretation of the allegations of which they are susceptible and any

doubts as to the meaning of the allegations are to be resolved in favor of the insured and coverage. *Heyden Newport* at 26; *Continental Sav. Ass'n v. United States Fidelity and Guar. Co.*, 762 F.2d 1239, 1244 (5th Cir.1985), *amended*, 768 F.2d 89 (5th Cir. 1985). If the third party only alleges facts that, even if true, are excluded by the policy, the insurer does not have a duty to defend regardless of the legal theories involved in the case. *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex.1982).

■ Under the policies issued by Maryland,

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> > Coverage A   bodily injury or
> >
> > Coverage B   property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

"Occurrence" is defined in the policies as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." "Bodily injury" is defined in the policies as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom."

TCB initially did not contend that the Goldenberg lawsuit involves claims for "bodily injury." [1] TCB has subsequently changed its position, and now argues that the claim for damages for mental anguish in the Goldenberg lawsuit will allow the introduction of evidence of bodily injury resulting from the alleged mental anguish, so that the duty to defend is triggered. TCB also argues that the Maryland policies can be reasonably interpreted as including coverage for mental anguish damages unaccompanied by physical manifestation. [2] The Goldenberg lawsuit is devoid of any claims for bodily injury other than mental anguish. Although Texas law has not yet determined whether "bodily injury" refers to mental anguish or emotional distress, the Fifth Circuit has recently concluded that the phrase "bodily injury" unambiguously excludes emotional nonphysical injuries such as are alleged in the Goldenberg lawsuit. *Travelers Indem. Co. v. Holloway*, 17 F.3d 113, 115 (5th Cir.1994). Thus, Maryland has no duty to defend or indemnify TCB under the coverage for claims involving "bodily injury."

■ "Property damage" is defined in the policies as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." The term "tangible property" is not defined in the policies. TCB does not claim that the Goldenberg lawsuit involves claims for "physical damage," [3] as found in the first prong of the property damage definition, but rather that the allegations, particularly involving TCB's negligence, involve "loss of use of tangible property which has not been physically injured" allegedly "caused by" an "accident." [4]

According to TCB, the Goldenberg beneficiaries' Third Amended Original Petition seeks damages for loss of the use of the

---

1. Defendant's Response to Plaintiff's Motion for Summary Judgment at 6.

2. Defendant's Response to Plaintiff's Amended Motion for Summary Judgment at 14–15.

3. Defendant's Response to Plaintiff's Motion for Summary Judgment at 6.

4. *Id.* at 7.

money in the Goldenberg Trust Fund and loss of the use of the tangible property (the rental property that was part of the trust assets). TCB asserts that the money in the Goldenberg Trust Fund is "tangible property" and the rental property in the trust assets is "tangible property" within the definition of "property damage" quoted above. TCB asserts that the term "tangible" is ambiguous and capable of two reasonable interpretations so that the Court must enforce TCB's interpretation, as the insured.

The Court concludes that TCB's interpretation of the policy definition of "property damage" is unreasonable. The factual allegations presented in the Goldenberg lawsuit involve claims by trust beneficiaries for economic loss—the conversion of money in a bank account and other trust assets. The Goldenberg beneficiaries do not allege *loss of use* of the rental property as required in the second prong of the "property damage" definition. They seek to recover lease income from trust rental property and unpaid taxes on the property, as well as the difference between the fair market value of the property and its actual sales price, and the cost to repair damage and destruction to the property while in the defendants' control. Thus, the Goldenberg beneficiaries' allegations concerning the real property are not encompassed within the definition of "property damage." As for the converted bank account, the Goldenberg Trust Fund, the Court has examined the most closely analogous Texas cases and concludes that this economic loss is likewise not encompassed in the definition of "property damage." *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 156 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co.*, 829 S.W.2d 270, 273 (Tex.App.—Dallas 1992, writ denied).[5]

■ TCB's position requires, in essence, that in every instance where there is a disagreement about coverage between an insurer and insured, an ambiguity exists, and the insured's interpretation must govern so that the insured would always prevail. As noted above by the Texas Supreme Court in *Forbau v. Aetna Life Ins. Co.*, mere conflicting expectations are not sufficient to create an ambiguity in an insurance policy. The Court concludes that the Maryland insurance policies at issue in this case are not ambiguous, and that the claims in the Goldenberg lawsuit do not fall within the policies' coverage so that Maryland has no duty to defend or indemnify TCB in that suit.

## CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment is GRANTED, and Defendant's Cross–Motion for Summary Judgment is DENIED.

SO ORDERED.

---

5. The Court notes that in the context of interpreting the prejudgment interest statute, Texas courts have held that economic loss is not property damage. *Associated Telephone Directory Publishers, Inc. v. Five D's Publishing Co.*, 849 S.W.2d 894, 900 (Tex.App.—Austin 1993, no writ); *Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d 103, 154 (Tex.App.—Texarkana 1994, writ filed).