**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 99-10560
Summary Calendar

---

POTOMAC INSURANCE COMPANY OF ILLINOIS,

Plaintiff-Counter Defendant-Appellant,

VERSUS

JAYHAWK MEDICAL ACCEPTANCE CORPORATION; ET AL.,

Defendants,

JAYHAWK MEDICAL ACCEPTANCE CORPORATION

Defendant-Counter Claimant-Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
January 4, 2000

Before SMITH, BARKSDALE and PARKER, Circuit Judges.

Robert M. Parker, Circuit Judge:

Appellant, Potomac Insurance Company of Illinois ("Potomac"), appeals the district court's ruling on summary judgment that Potomac had a duty to defend Appellee, Jayhawk Medical Acceptance Corporation ("Jayhawk") in three lawsuits under the terms of a comprehensive general liability insurance policy. The specific issue on appeal is the district court's holding that a "professional services" exclusion in the policy did not apply to relieve Potomac of its duty to defend. Because

we find that the services performed by Jayhawk were not "professional services," we AFFIRM.

## FACTS AND PROCEEDINGS BELOW

Jayhawk provides financing for elective surgeries and refers clients to doctors who perform such surgeries. At all pertinent times referred to herein, Jayhawk was insured by Potomac under a comprehensive general liability policy. The policy provided coverage for "bodily injury" and "property damage" caused by an occurrence during the period covered by the policy. Claims related to the rendition of professional services are specifically excluded from coverage. The applicable exclusion reads:

> With respect to any professional services shown in the Schedule, this insurance does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" due to the rendering or failure to render any professional service.

In 1998, Jayhawk was sued by three persons who were dissatisfied with the results of their breast augmentation surgeries.[1] After Jayhawk submitted these claims to Potomac for a defense, Potomac filed a declaratory judgment action in federal

---

[1] Two of the cases were filed against Jayhawk and the doctors who performed the surgeries. *See Lasoya v. Al-Marashi, M.D., et al.*, No. DV98-1835 (116th Dist. Ct., Dallas County, Texas); *Juarez v. Jayhawk Medical Acceptance Corp., et al.*, No. 798281 (Dist. Ct., Orange County, California). One case was initiated by Jayhawk, but the patient filed a counterclaim. *See Jayhawk Medical Acceptance Corp. v. Sarmiento*, No. CV198-423AC (7th Dist. Ct., Clay County, Missouri).

court.[2]  The district court ruled that the act of referring

patients to doctors to perform elective surgeries is not a

"professional service" so as to be excluded from coverage under

this general liability policy and that Potomac had a duty to

defend Jayhawk in the lawsuits.

> The question thus becomes whether referring
> patients to doctors and verifying their qualifications
> to perform elective surgery are inherent to the
> specialized knowledge Jayhawk brings to its business.
> Jayhawk argues that it simply arranges financing for
> patients and contracts with physicians.  Of course, the
> point of making these contracts is to put doctors on a
> referral list; however, no specialized knowledge or
> skill particular to the business is required once these
> financial arrangements are made.  Potomac has failed to
> prove that referrals themselves involve anything more
> than merely finding a local doctor who has arranged to
> participate in the program.  The Court therefore
> concludes that the act of referring patients to doctors
> for elective surgery is not a "professional service" in
> the context of this particular case.

Based on the general allegations of negligent referrals in

each of the three complaints against Jayhawk and the fact that

the mere act of referral does not constitute a "professional

service," the Court held that Potomac had a duty to defend

Jayhawk in the lawsuits.

## STANDARD OF REVIEW

Our review of a grant of summary judgment is *de novo*.  *See*

---

[2]  Jayhawk asserted counterclaims for breach of contract, unfair claims settlement practices, breach of the duty of good faith and fair dealing and violations of the Texas Insurance Code.  Neither party sought summary judgment regarding these claims.

*Canutillo v. Indep. School Dist. v. National Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996). In addition, the district court's interpretation of an insurance contract is reviewed *de novo*. *See id.; Principal Health Care v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994).

**INSURANCE CONTRACT INTERPRETATION**

In this case, Texas rules of contract interpretation control. *See Amica Mut. Ins. Co. v. Moak,* 55 F.3d 1093, 1095 (5th Cir. 1995). Texas courts interpret insurance contracts under the same rules that apply to contracts generally. *See Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987).

In examining a summary judgment ruling relating to the construction of an insurance contract, we must first determine whether the applicable policy terms are ambiguous. *See Canutillo*, 99 F.3d at 700 (citing *Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 917 (Tex. App.--Fort Worth 1988, writ denied)). If the terms of a contract are reasonably susceptible to two differing interpretations, then that contract is ambiguous. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Any ambiguity in a contract is resolved in favor of the insured. *See National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 554 (Tex. 1991). This Circuit recently spoke on the effect that a contract's ambiguousness has on a court's construction of that contract.

Under Texas law, an insurance contract will be [*sic*] not be construed neutrally unless it is susceptible of only one reasonable construction. If multiple interpretations are reasonable, the court must construe the contract against the insurer, and this applies with special force when exceptions to liability are examined.

*Travelers Indemnity Co. v. CITGO Petroleum Corp.*, 166 F.3d 761, 769 (5th Cir. 1999) (citing *Western Heritage Ins. Co. v. Magic Years Learning Centers and Child Care, Inc.*, 45 F.3d 85, 88 (5th Cir. 1988)). "These special rules favoring the insured, however, are applicable only when there is an ambiguity in the policy; if the exclusions in question are susceptible to only one reasonable construction, these rules do not apply." *Canutillo*, 99 F.3d at 701.[3]

Texas courts use the "eight corners" or "complaint allegation" rule when determining whether an insurer has a duty to defend. *See Canutillo*, 99 F.3d at 701; *Duncanville Diagnostic Ctr., Inc. v. Atlantic Lloyd's Ins. Co.*, 875 S.W.2d 788, 789

---

[3] "Not every difference in the interpretation of an insurance policy amounts to an ambiguity." *Maryland Casualty Co. v. Texas Commerce Bancshares, Inc.*, 878 F. Supp. 939, 941 (N.D. Tex. 1995). Although the insured and the insurer take conflicting views of coverage, neither conflicting expectations nor dialectics are sufficient to create ambiguity. *Id.* (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)). In addition, mere absence of a policy definition does not give rise to a finding of ambiguity. *See Harris Methodist Health Sys. v. Employers Reinsurance Corp.*, No. 3:96-CV-0054, 1997 WL 446459, at *5 (N.D. Tex. July 25, 1997) (noting that "Texas courts have previously given meaning to the phrase 'professional services' where it has not been specifically defined in an insurance contract, reinforcing the idea that the absence of a policy definition does not create an ambiguity") (footnote omitted).

(Tex. App.--Eastland 1994, writ denied) ("To determine whether an insurer has a duty to defend its insured in a lawsuit, the allegations in the underlying suit must be considered in light of the provisions of the insurance policy.").  Our decision regarding the duty to defend is not influenced by "facts ascertained before the suit, developed in the process of litigation, or by the ultimate outcome of the suit."  *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993) (quoting *American Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 153-54 (Tex. App.--Dallas 1990, writ dism'd)).

An insurer must defend an insured only when facts alleged in the complaint, if taken as true, "potentially state a cause of action within the terms of the policy."  *Canutillo*, 99 F.3d at 701 (quoting *Gulf Chem.*, 1 F.3d at 369).  As long as the complaint states at least one cause of action within the policy's coverage, the duty to defend attaches.  *See Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983).

**DISCUSSION**

Pursuant to the "eight corners rule" we will examine each of the three complaints in the underlying lawsuits involving Jayhawk in light of the general liability policy and the "professional services" exclusion contained therein to determine whether Potomac is obligated to defend Jayhawk.  As

-6-

the district court noted, the patients all generally alleged negligent referrals on the part of Jayhawk; however, only two two plaintiffs allege that Jayhawk made specific representations as to the competency of the doctors who performed the surgeries.

### The Sarmiento Case.

Julia Sarmiento alleged negligent referral and negligent investigation of Dr. John Baeke's qualifications against Jayhawk in a counterclaim. In her negligent referral allegation, Ms. Sarmiento fails to allege that Jayhawk did anything beyond merely referring her to Dr. Baeke. Because mere referrals are administrative, or ministerial tasks that do not fall within the exclusion for "professional services," we affirm the district court's ruling the Potomac must defend Jayhawk in the lawsuit brought by Ms. Sarmiento.

The mere act of referring a person to a doctor does not constitute a "professional service" as the phrase is defined in Texas. Recently, the Texas Court of Appeals held that an attorney's solicitation letter sent to a prospective client, which does not include any legal advice, did not fall within an insurance policy exclusion exempting "designated professional services." *See Atlantic Lloyd's Ins. Co. v. Susman Godfrey*, 982 S.W.2d 472, 478 (Tex. App. 1998--Dallas, writ denied). The Court of Appeals gave the following

statement regarding "professional service":

> [I]t is clear that a professional must perform more than an ordinary task to perform a professional service. To qualify as a professional service, the task must arise out of the acts particular to the individual's specialized vocation. We do not deem an act a professional service merely because it is performed by a professional. Rather, it must be necessary for the professional to use his specialized knowledge or training.

*Susman Godfrey*, 982 S.W.2d at 476-77 (citations omitted). *See also Duncanville*, 875 S.W.2d at 790 ("In some sense, of course, a profession involves labor, skill, education, special knowledge and compensation or profit."). It is clear that the mere act of referring a patient to a doctor, without more, does not constitute a professional service. Therefore, we affirm the district court's ruling with respect to Ms. Sarmiento. Potomac must defend Jayhawk in this suit.

### The Lasoya and Juarez Cases

The remaining two complaints against Jayhawk, allege more than mere referrals in their negligent referral claims. The Lasoya complaint and the Juarez complaint allege that Jayhawk made specific statements regarding the competency of the doctors to whom Ms. Lasoya and Ms. Juarez were referred. Although an allegation that Jayhawk represented that these doctors were competent goes beyond a mere referral, such an allegation does not constitute the performance of a "professional service" as defined by Texas courts.

-8-

"To qualify as a professional service, the task must arise out of the acts particular to the individual's specialized vocation. . . . [I]t must be necessary for the professional to use his specialized knowledge or training." *Susman Godfrey*, 982 S.W.2d at 476-77 (citations omitted). Jayhawk is not in a profession. It provides financial assistance to persons seeking elective operations not otherwise covered by insurance. In addition, Jayhawk's knowledge relates to financial matters, not to doctor qualifications. Therefore, a referral that represents that a particular doctor is qualified does not constitute a "professional service" under the facts of this case. Potomac has a duty to defend Jayhawk in these two cases as well.

## CONCLUSION

For the above-stated reasons, we AFFIRM the district court's ruling that Potomac has a duty to defend Jayhawk in the three lawsuits filed by Ms. Sarmiento, Ms. Lasoya and Ms. Juarez.