ANDREWS TRANSPORT, INC.

v.

CNA REINSURANCE CO., LTD.

No. 4:99–CV–1023–E.

United States District Court,
N.D. Texas,
Fort Worth Division.

April 12, 2001.

John Allen Chalk, Sr., Whitaker, Chalk, Swindle & Sawyer, Fort Worth, TX, for Plaintiff.

Charles R. Haworth, Owens, Clary & Aiken, Dallas, TX, Leonard S. Surdyk, Joanne J. Matousek, Mandell, Menkes & Surdyk, Chicago, IL, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

MAHON, District Judge.

Now before the Court are respective motions for summary judgment filed by Plaintiff Andrews Transport, Inc. ("Andrews") and Defendant CNA Reinsurance Co., Ltd. ("CNA"). Both parties have submitted voluminous briefing on the motions, and the Court conducted a hearing on this matter on February 5, 2001. Based on the oral arguments and filings of the parties, the record in this matter, and the applica-

ble law, the Court makes the following determinations.

## I. *BACKGROUND*

This lawsuit involves an insurance policy dispute between an insured, Andrews, and its insurer, CNA. Andrews, a Texas-based trucking and transport company, filed this declaratory judgment action regarding liability insurance coverage for a lawsuit filed against the company on July 9, 1999, in Texas state court, *William Lloyd Bridges v. Andrews Transport Inc. and Andrews Leasing Inc.* ("the Bridges Suit"). Andrews seeks a declaration that CNA has a duty to defend Andrews in the underlying lawsuit pursuant to an Employment Practices Liability Insurance policy (the "Policy"), issued to Andrews by CNA on or about August 1, 1998. CNA seeks a declaration to the contrary. Both parties have agreed that this matter can and should be resolved by this Court as a matter of law on summary judgment and without the necessity of trial.

There is no dispute about the facts, and the Court has relied solely upon the insurance contract and the petitions filed in the underlying lawsuit in ruling on the cross-motions for summary judgment.[1]

### A. *The Underlying Bridges Litigation*

The class action petition William Lloyd Bridges filed against Andrews in Texas state court in July 1999 included causes of action for fraud, conversion, money had and received, unjust enrichment, breach of contract, and breach of the implied covenant of good faith and fair dealing. Bridges, seeking to certify a class of "independent truck drivers," alleged that he and the other truckers had agreements with

---

1. *See, e.g., New York Life Ins. Co. v. Travelers Ins. Co.,* 92 F.3d 336, 338 (5th Cir.1996)(noting that the insurance contract and underlying petitions are the only material upon which the Court may rely under Texas' "eight corners rule," and further stating that, under Texas law, the interpretation of insurance polices is a question of law).

Andrews providing that the truckers would use their own trucks to haul Andrews' loads in exchange for a certain percentage of the total hauling fee. Bridges asserts that Andrews wrongfully withheld state and federal taxes and unemployment insurance deductions from the truckers' checks, and contends that Andrews instead should have paid these amounts to the truckers individually.

Bridges filed a First Amended Petition on March 6, 2000, and a Second Amended Petition on October 2, 2000. The Second Amended Petition added two individuals as defendants, alleged an additional alter ego cause of action, and asserted that Bridges and the other class members were Andrews' employees—not independent contractors after all.

## B. *Relevant Provisions of CNA's Insurance Policy with Andrews*

The general coverage provision of the Policy obligates CNA to compensate Andrews for any "**Loss** amounts on...account of a **Claim** by a **Claimant** because of an **Insured Event** to which this policy applies." Policy at § I.A.1. "Claim" is defined as "a written demand in which damages are alleged...[or] a civil action or an administrative proceeding...." *Id.* at II. A.2–3. The Policy notes that "Claimant" means "a current or former Employee...," with "Employee" describing those "individual[s] whose labor or service is engaged by and directed by an insured entity....," including "[i]ndependent contractors who claim to be an Employee." *Id.* at II.F.

Under the Policy, an "Insured Event" means "actual or alleged acts of Discrimination, Harassment, Negligent Hiring, and/or a Wrongful Employment Decision, by an Insured...." *Id.* at II.I. Finally,

"Wrongful Employment Decision" is defined, in relevant part, as:

. . . . .

2. allegations of wrongful demotion, retaliation, misrepresentation, promissory estoppel and intentional interference with contract; which arise from an employment decision to employ, terminate, evaluate, discipline, promote or demote;

. . . . .

4. allegations of breach of an implied employment contract and breach of the covenant of good faith and fair dealing in the employment contract;
5. employment terminations, disciplinary actions, demotions or other employment decisions which violate public policy or the Family Medical Leave Act or similar state law....

*Id.* at II.Q.

## II. SUMMARY JUDGMENT STANDARDS

Summary Judgment is proper when the record establishes that no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Hill v. London, Stetelman, & Kirkwood, Inc.,* 906 F.2d 204, 207 (5th Cir.1990). The evidence in the record is to be viewed in the light most favorable to the nonmoving party. *See Newell v. Oxford Management Inc.,* 912 F.2d 793, 795 (5th Cir.), *reh'g denied,* 918 F.2d 484 (1990); *Medlin v. Palmer,* 874 F.2d 1085, 1089 (5th Cir.1989).

In order to prevail on a motion for summary judgment, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988); Fed.R.Civ.P. 56(c). The party moving for summary judgment need not produce evidence showing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof. *See Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548. Rather, the party moving for summary judgment need only show that the party who bears the burden of proof has adduced no evidence to support an element essential to its case. *See id.; Teply v. Mobil Oil Corp.,* 859 F.2d 375, 379 (5th Cir.1988). If the movant bears the burden of proof on a claim or defense, he must establish all elements of the claim or defense to prevail on summary judgment. *See U.S. v. Home Health Agency, Inc.,* 862 F.Supp. 129, 133 (N.D.Texas 1994) (Mahon, J.); *Western Fire Insurance Co., v. Copeland,* 651 F.Supp. 1051, 1053 (S.D.Miss.1987), *aff'd,* 824 F.2d 970 (5th Cir.1987).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine fact issue. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. In order to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Rule 56(e) requires that the nonmoving party "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *See Williams,* 836 F.2d at 961. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion and any doubt must be resolved in their favor. *See Matsushita,* 475 U.S. at 587–90, 106 S.Ct. 1348; *Meyers v. M/V Eugenio,* 842 F.2d 815, 816 (5th Cir.1988). The Court's function, however, is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

## III. *DISCUSSION*

### A. *Interpretation of Insurance Contracts*

■ Texas rules of insurance contract interpretation control in a diversity case such as this one. *See Canutillo Sch. Dist. v. National Union Fire Ins. Co.,* 99 F.3d 695, 700 (5th Cir.1996); *Amica Mut. Ins. Co. v. Moak,* 55 F.3d 1093, 1095 (5th Cir. 1995). Pursuant to Texas law, the interpretation of an insurance contract is a question of law, and is governed by the same rules that apply to contracts in general. *See Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994); *Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex.1983); *see also Potomac Ins. Co. v. Jayhawk Medical Acceptance Corp.,* 198 F.3d 548, 550 (5th Cir.2000).

■ Terms used in insurance policies are given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense. *See Canutillo,* 99 F.3d at 700. If the terms of an insurance policy are reasonably susceptible to two differing interpretations, then the contract is ambiguous. *See Coker,* 650 S.W.2d at 393. Any ambiguity in a contract is resolved in favor of the insured. *See National Union Fire*

*Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 554 (Tex.1991). However, "[n]ot every difference in the interpretation of an insurance policy amounts to an ambiguity." *Maryland Cas. Co. v. Texas Commerce Bancshares, Inc.*, 878 F.Supp. 939, 941 (N.D.Tex.1995). Although the insured and the insurer may take conflicting views of coverage, neither conflicting expectations nor dialectics are sufficient to create ambiguity. *See Forbau*, 876 S.W.2d at 134.

## B. *The Duty to Defend Standard*

 In determining whether an insurer has a duty to defend, the court must examine the latest amended pleading upon which the insurer based its refusal to defend the action. *See Canutillo*, 99 F.3d at 701. Texas courts follow the "eight corners" or "complaint allegation" rule, which requires the trier of fact to examine only the allegations in the underlying complaint and the insurance policy, without reference to their truth or veracity. *See id.; Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973).

 In reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged. *See American States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir.1998). The duty to defend arises when the facts alleged in the complaint, if taken as true, potentially state a cause of action within the terms of the policy. *See Canutillo*, 99 F.3d at 701. Thus, it is the insured's burden to show that the claim against it is potentially within the policy's coverage. *See id.* An insurer has an obligation to defend an insured if the petition alleges at least one cause of action within the policy's coverage. *See id.* If, however, under the facts alleged, there is a prima facie showing that the claim is not covered under the policy, the insurer has no duty to defend. *See National Union*, 939 S.W.2d at 141.[2]

## C. *CNA's Alleged Duty to Defend Andrews in the Bridges Litigation*

Pursuant to the "eight corners rule," this Court will examine Bridges' original and amended petitions in light of the Policy to determine whether CNA is obligated to defend Andrews.

### 1. *The Original and First Amended Petitions*

 A threshold requirement of the CNA insurance policy is that coverage only extends to claims made by a valid Claimant. *See* Policy at § I.A.1. The Policy defines a "Claimant" as "a current or former Employee...." *Id.* at § II.B. "Employee" means "an individual whose labor or service is engaged by and directed by an insured entity...Independent contractors who claim to be an Employee of an insured entity will be Claimants...." *Id.* at § II.F.

Throughout the Original and First Amended petitions, Bridges contends that he and his fellow truck drivers are independent contractors, not employees of Andrews. In paragraphs 20 and 21 of the petitions, for example, Bridges states that the "[p]laintiffs are independent truck drivers ... who own their own trucks ... [Plaintiffs] are not employees of Defendants ... Plaintiffs are independent con-

**2.** Unlike the duty to defend, which is based on the allegations in the petition, the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex.1997). Accordingly, if there is no duty to defend, there can be no duty to indemnify. *See Bailey*, 133 F.3d at 368. The current case only involves a determination of CNA's duty to defend in the *Bridges* litigation.

tractors, therefore no 'wages' were paid to them by Defendants for employment." Original and First Am. Pets. at ¶¶ 20–21. Bridges goes on to argue that because the truck drivers were independent contractors, Andrews erred in withholding state and federal taxes and unemployment insurance deductions meant only for employees from the truckers' paychecks.

Bridges and his fellow class members do not fall within the clear definitions of "Employee" or "Claimant" in the Policy, and thus CNA does not have a duty to defend Andrews under the Original and First Amended petitions. Bridges explicitly insists that the truck drivers are not Andrews' employees, but rather operate as independent contractors. Because only independent contractors who allege that they are employees are covered as "Claimants" under the Policy -and Bridges makes no such assertion in either pleading—Andrews' attempt to gain insurance coverage for the Original and First Amended petitions must fail. Accordingly, CNA's Motion for Summary Judgment is GRANTED as to Bridges' Original and First Amended petitions.

### 2. *The Second Amended Petition*

■ In the Second Amended Petition, Bridges and the other class members shift their position and assert that while they are "independent truck drivers ... who own their own trucks," they should now be considered employees of Andrews. Second Am. Pet. at ¶¶ 23, 27, 28 ("As employees of the Defendants..."; "As the Plaintiff and class members are considered to be the employees of the Defendants..."). Accepting these new allegations as true pursuant to the "eight corners rule," the Court concludes that Bridges has demonstrated that the truck drivers were Andrews' employees and, consequently, "claimants" under the CNA Policy.

■ Despite the finding that Bridges and his fellow class members are "claimants," CNA will not have a duty to defend Andrews unless Bridges' allegations constitute an "Insured Event" within the Policy's terms. An "Insured Event" is defined by the Policy as "actual or alleged acts of Discrimination, Harassment, Negligent Hiring, and/or a Wrongful Employment Decision, by an Insured...." Policy at § II.I. Because Bridges makes no allegations of discrimination, harassment, or negligent hiring in the Second Amended Petition, the key inquiry becomes whether any of Andrews' alleged actions constitute a "Wrongful Employment Decision."

The Policy defines "Wrongful Employment Decision," in relevant part, to include:

. . . . .

2. allegations of wrongful demotion, retaliation, misrepresentation, promissory estoppel, and, intentional interference with a contract, which arise from an employment decision to employ, terminate, evaluate, discipline, promote or demote;

. . . . .

4. allegations of breach of an implied employment contract and breach of the covenant of good faith and fair dealing in the employment contract;

5. employment terminations, disciplinary actions, demotions or other employment decisions which violate public policy or the Family Medical Leave Act or similar state law....

*Id.* at § II.Q. Having reviewed the Second Amended Petition, the Court determines that none of Bridges' allegations fall within the three above-listed definitions of a "Wrongful Employment Decision," and thus CNA does not have a duty to defend Andrews in the *Bridges* litigation.

First, Bridges' allegations of misrepresentations by Andrews do not arise from "an employment decision to employ, terminate, evaluate, discipline, promote or demote." *Id.* at II.Q.2. In his cause of action for fraud, Bridges asserts that Andrews, in documentation accompanying the truck drivers' paychecks, falsely represented that the company was required by law to make various state and federal tax deductions from the checks. *See* Second Am. Pet. at ¶ 34. Nowhere in the Second Amended Petition, however, does Bridges allege that Andrews' misrepresentations occurred at the time the truck drivers were hired, or that the drivers accepted employment with Andrews in reliance on the company's alleged misrepresentations. Rather, Bridges states only that he and the other class members relied on Andrews' misrepresentations "by accepting checks"—not employment—from the company. *Id.* It would require an impermissible leap of logic for this Court to conclude that Bridges' misrepresentation allegations arise from an "employment decision to employ," especially considering that Andrews has failed to sustain its burden on this issue. *See Canutillo,* 99 F.3d at 701 (insured has burden of demonstrating that the claim against it is potentially within the policy's coverage in order to trigger duty to defend). Bridges simply has not plead that the alleged misrepresentations by Andrews occurred during the company's initial recruitment and hiring of the truck drivers, as required by the plain language of the Policy.

■ Second, Bridges makes no allegations in the Second Amended Petition regarding the "breach of an implied **employment contract** and breach of the covenant of good faith and fair dealing in the **employment contract.**" Policy at § II.Q.4 (emphasis added). In his breach of contract claim, Bridges contends that:

> [a] special relationship exists between Plaintiff and class members and Defendants because of their lease agreements. Because of this special relationship, an implied covenant of good faith and fair dealing is imposed by law to accompany each lease agreement. Defendants breached this covenant of good faith and fair dealing....

Second Am. Pet. at ¶ 44. The Second Amended Petition contains no mention of any breach of an *employment contract* between Andrews and the truck drivers, however, and states only that Andrews violated "a special relationship" that the parties enjoyed because of their lease agreements. Andrews has not satisfied its burden of demonstrating that the Second Amended Petition contains any allegations regarding the breach of an employment contract, and thus CNA does not have a duty to defend Andrews on this basis.[3]

■ Finally, Bridges does not allege a cause of action that comes within the Policy's coverage for "employment terminations, disciplinary actions, demotions, or other employment decisions which violate public policy...." Policy at § II.Q.5. In the Second Amended Petition, Bridges alleges that Andrews' calculation and payment of compensation to its truck drivers violated SUTA, FUTA, FICA, and workers' compensation laws, and Andrews claims that these allegations satisfy the Policy's coverage for "other employment

---

**3.** The Court also notes that Bridges' allegations regarding an "implied covenant of good faith and fair dealing" between the truck drivers and Andrews cannot possibly state a cause of action within the Policy's coverage for employment contracts, as required by the Fifth Circuit in *Canutillo,* since the Texas Supreme Court has held that there is no duty of good faith and fair dealing in the employment context. *See City of Midland v. O'Bryant,* 18 S.W.3d 209, 216 (Tex.2000).

decisions which violate public policy." *See* Second Am. Pet. at ¶¶ 24–30. Unfortunately for Andrews, however, Bridges' allegations cannot state a cause of action within the terms of the Policy, as required by the Fifth Circuit's decision in *Canutillo*. *See Canutillo,* 99 F.3d at 701. Although Andrews argues that actions contrary to the provisions of SUTA, FUTA, FICA, and the workers' compensation statutes constitute a "violation of public policy," Bridges does not plead any causes of action requesting relief pursuant to these laws, and Andrews cites no authority suggesting that such statutes even allow for private causes of action. *See, e.g., White v. White Rose Food,* 62 F.Supp.2d 878, 887 (E.D.N.Y.1999) (private cause of action cannot exist under provisions of FUTA, FICA, and New York State's unemployment insurance statutes); *Salazar v. Brown,* 940 F.Supp. 160, 164 (W.D.Mich. 1996) (no private right of action under FICA). Andrews has failed to meet its burden of demonstrating that Bridges' claims are potentially within the Policy's coverage for "employment decisions which violate public policy," and thus CNA has no duty to defend the *Bridges* litigation.[4] Accordingly, CNA's Motion for Summary Judgment is GRANTED as to Bridges' Second Amended Petition.

### D. *Attorneys' Fees*

 The Court declines to award either party attorneys' fees in this case. The issues presented required a judicial ruling and the interests of justice are not served by an award of fees or expenses. *See Thom v. State Farm Lloyds,* 10

F.Supp.2d 693, 703 (S.D.Tex.1997). CNA is entitled, however, to recovery of its costs of court. *See* 28 U.S.C. §§ 1920, 1924 (1994).

### IV. *CONCLUSION*

Having reviewed the record before the Court, the briefing of the parties, and the applicable law, the Court determines that CNA's Motion for Summary Judgment should be GRANTED as to Bridges' Original, First Amended, and Second Amended petitions, and CNA shall have no duty to defend Andrews in the underlying Bridges litigation.

It is therefore ORDERED that CNA's Motion for Summary Judgment is hereby GRANTED as set forth previously herein. In addition, it is ORDERED Andrews' Motion for Summary Judgment is hereby DENIED.

It is further ORDERED that neither party shall be awarded attorneys' fees in this matter, but it is hereby ORDERED that CNA is entitled to recover its costs of court.

---

4. Having held that Bridges' Second Amended Petition fails to state a cause of action within the Policy's coverage for "other employment decisions which violate public policy," the Court deems it unnecessary to define the plain ordinary meaning of "employment decision" and "public policy" for purposes of interpreting the CNA Policy. Even if the Court were to interpret the terms in the manner suggested by Andrews, it would not change the fact that the trucking company has failed to meet its burden of showing that Bridges has alleged any causes of action that fall within the Policy's coverage.