**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 02-30507
Summary Calendar

_____

DONALD M. DURKIN,

Plaintiff-Appellant,

versus

UNITED STATES POSTAL SERVICE, John E. Potter,
Postmaster General,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Eastern District of Louisiana
(01-CV-0914)
_____

December 5, 2002

Before HIGGINBOTHAM, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Donald Durkin, a white male, worked for the United States
Postal Service ("USPS") from March 1972 until his retirement in
December 1995. Beginning in 1991, after applying for and failing
to receive a team leader position, Durkin requested training that
would make him eligible for such a position in the future. When

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

Durkin was placed on the Internal Crimes Team as the audit inspector and not given a team leader position as he requested, he filed a formal complaint; the Equal Employment Opportunity Commission ("EEOC") found no discrimination. Durkin's second formal complaint alleged that USPS (1) placed him on a non-team assignment and did not provide him with proper equipment and supplies during his five-year audit assignment; (2) denied him training opportunities when two vacancies were available in the New Orleans Division; (3) assigned him to positions with no opportunity for advancement; and (4) did not select him to interview for two team leader vacancies. The EEOC affirmed a final agency decision denying Durkin's claims and denied reconsideration.

In April 2001, Durkin brought this action under Title VII, 42 U.S.C. § 2000e, et seq., alleging that USPS discriminated against him based on his race and gender and that he was retaliated against for filing complaints with the EEOC. The retaliation claims were dismissed in October 2001. USPS moved to dismiss the claims related to Durkin's second administrative complaint under Federal Rule of Civil Procedure 12(b)(1) because the lawsuit was not filed within the statutory period and moved to dismiss the remainder of Durkin's claims for failure to state a claim under Rule 12(b)(6) or in the alternative for failure to present genuine issues of material fact under Rule 56. Durkin filed a response and sought summary judgment. The district court granted USPS's motion for

2

summary judgment on Durkin's discrimination claim, dismissed Durkin's hostile work environment claim, and found that Durkin was time-barred from bringing claims stemming from his second administrative complaint. Durkin appeals the grant of summary judgment and the dismissal.

*Discrimination Claim*

We review summary judgment rulings de novo, <u>Potomac Ins. Co. v. Jayhawk Med. Acceptance Corp.</u>, 198 F.3d 548, 550 (5th Cir. 2000), and apply the same standard as the district court. <u>Wyatt v. Hunt Plywood Co., Inc.</u>, 297 F.3d 405, 408 (5th Cir. 2002). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). We view all evidence and factual inferences in the light most favorable to the party opposing the motion. <u>Price v. Federal Exp. Corp.</u>, 283 F.3d 715, 719 (5th Cir. 2002).

A Title VII plaintiff bears the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). A plaintiff may prove a prima facie case of discrimination by showing (1) that he is a member of a protected class, (2) that he was qualified for the position, (3) that he suffered an adverse employment action, and (4) that others similarly situated were more favorably treated. <u>LaPierre v. Benson Nissan</u>, 86 F.3d 444, 448

3

(5th Cir. 1996).  The elements of a prima facie case for failure to promote vary slightly; for such a case, plaintiff must show: (1) membership within a protected class, (2) that he applied and was qualified for the position sought, (3) that he was not promoted or transferred, and (4) after his rejection, the position remained open and the employer continued to seek applicants from persons with plaintiff's qualifications.  See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 n. 6 (1981) (quoting McDonnell Douglas, 411 U.S. at 802); Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 324 (5th Cir. 2002).  Once established, the plaintiff's prima facie case raises an inference of intentional discrimination.  McDonnell Douglas, 411 U.S. at 802.  The burden then shifts to the defendant to rebut the presumption by articulating a legitimate, nondiscriminatory reason for the challenged employment action.  See Burdine, 450 U.S. at 254-55.  The plaintiff then has the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Id. at 253.

Durkin claims that USPS did not offer a legitimate, nondiscriminatory reason for the challenged employment actions.  On appeal, Durkin emphasizes his allegation that he was placed in the audit inspector position on the Internal Crimes Team for discriminatory reasons and to keep him from gaining leadership experience.  He asserts that the reasons given by USPS and accepted

4

by the district court do not address his assignment as audit inspector.

Though the district court did not directly rule on whether or not Durkin's assignment to the Internal Crimes Team was discriminatory, we find that USPS's action of placing Durkin on that team does not satisfy the adverse employment action element needed to create a prima facie case of discrimination. Durkin himself alleges that he was assigned to the new position because of his complaints about his previous position and its lack of advancement, so at the very least he was no worse off in the new position. At the time Durkin was placed on the Internal Crimes Team and given the audit inspector position, his supervisor, Karl Kell, believed that other inspectors would be assigned to the team over time and that Durkin might become team leader when that happened. From April 10 - 15, 1992, and November 27 - December 3, 1992, Durkin was appointed as acting team leader of the Internal Crimes Team. Not only was the assignment not adverse, there is no evidence that his placement on the team was motivated by gender or race discrimination.

The district court properly addressed Durkin's allegation that he was discriminated against in being passed over for team leader positions, which the district court characterized as a failure to promote claim. Assuming that Durkin made a prima facie case of discrimination in regards to this allegation, as the district court

5

assumed, USPS has put forth legitimate, nondiscriminatory reasons for its actions and Durkin has failed to show any pretext. Kell testified that Durkin was not given a team leader position because there was not enough work to justify creating a team in the audit field. Durkin was not transferred to team-oriented work outside of the audit field because after spending money and time training him for the audit inspector's position USPS felt it was a waste of resources to reassign him. The two team leader openings Durkin did not receive went to individuals with leadership experience in the fields in which the leadership positions were available. Their experience in those fields made it possible to fill the positions without additional training. The district court properly found that Durkin did not establish that USPS's explanation for failing to promote him was pretextual.

*Hostile Work Environment Claim*

We review a Rule 12(b)(6) dismissal de novo, accepting all well-plead facts as true. Mowbray v. Cameron County, Tex., 274 F.3d 269, 276 (5th Cir. 2001). Questions of fact are viewed in the light most favorable to the plaintiff, and questions of law are reviewed de novo. Id.

The district court found that Durkin did not make a hostile work environment claim in his administrative proceedings. "The scope of inquiry of a court hearing in a Title VII action 'is limited to the scope of the EEOC investigation which can reasonably

6

be expected to grow out of a charge of discrimination.'" <u>Young v. City of Houston</u>, 906 F.2d 177, 179 (5th Cir. 1990) (quoting <u>Sanchez v. Standard Brands</u>, 431 F.2d 455, 466 (5th Cir. 1970). The scope of Durkin's claim in his first complaint was limited to an investigation of his placement on the Internal Crimes Team as an auditor inspector rather than as a team leader. Given the scope of hostile work environment claims, the second complaint also did not include such a claim.

A hostile work environment claim under Title VII requires a court to evaluate whether the harassment is "so severe or pervasive as to alter conditions of [the victim's] employment and create an abusive working environment." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 786 (1998) (internal quotes omitted). Workplace conduct is not measured in isolation; instead, "whether an environment is sufficiently hostile or abusive" must be judged "by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Id.</u> at 787-88 (internal quotes omitted). The district court properly found that given the scope of investigation required by the filing of a hostile work environment claim, the EEOC proceedings did not encompass a hostile work environment claim.

*Conclusion*

For the reasons given above, we AFFIRM the district court.